622 A.2d 355

Michael J. KRAJSA, Appellant,

v.

KEYPUNCH, INC., Diane Colfer, Robert B. Colfer, Appellees.

Superior Court of Pennsylvania.

Argued Jan. 27, 1993.

Filed March 22, 1993.

---

Donald E. Wieand, Jr., Allentown, for appellant.

Mark Malkames, Allentown, for appellees.

Before McEWEN, POPOVICH and BROSKY, JJ.

POPOVICH, Judge.

This is an appeal from the judgment of the Court of Common Pleas of Lehigh County in a wrongful discharge case. Upon review, we affirm.

On January 17, 1989, appellant, Michael J. Krajsa filed a complaint against Keypunch, Inc., Diane Colfer, Robert B. Colfer and David Jordan (hereinafter collectively referred to as "appellees").[1] In the complaint, appellant avers that his termination of employment with appellees was "intentional, wrongful and without justification" and "retaliatory in nature and for the purpose and intent of harming [appellant]". Appellant's Complaint p. 4. To support his contentions, appellant pleads facts which suggest that appellees were violating their contracts with governmental and private parties by over billing them for work actually performed, and his job was terminated as a result of his "expressed willingness to advise proper authorities of [appellees'] unlawful business practices." Appellant's Complaint pp. 3–4. Appellant's amended complaint, filed March 20, 1989, reiterates verbatim those conten-

---

1. On August 20, 1990, upon stipulation and order, appellant's case was discontinued as to David Jordan.

tions and accompanying facts. Appellant's Amended Complaint pp. 3–4.

On June 23, 1989, the lower court entered an order which denied appellees' preliminary objections to appellant's complaint. The lower court implicitly held that appellant's complaint had set forth a wrongful discharge cause of action on public policy grounds.[2] Because of numerous pre-trial motions and conferences, the case was not called for trial until January 6, 1992.

At the trial, both parties presented their opening arguments, and appellant was then called as the first witness. Appellant began offering evidence regarding his wrongful discharge when appellees objected. The jury was recessed, and the trial court, after argument from both sides, sustained appellees' objections, and ruled that any testimony pertaining to the wrongful discharge claim was irrelevant on the basis that no cause of action existed. The court below, however, determined that the appellant had a viable claim for unpaid commissions and allowed the trial to proceed on that action. Ultimately, the jury found that a contract existed between the parties, but that appellant was not entitled to the commissions. Trial Court Opinion, p. 2.

Appellant then filed post trial motions which were denied by the lower court. On appeal, appellant contends that a cause of action for wrongful discharge existed, and thus the evidence regarding this claim was improperly excluded at trial. Appellant further argues that his claim for unpaid commissions was prejudiced by exclusion of the evidence of wrongful discharge, and that his ability to impeach appellee, Colfer, was severely hampered. Appellant requests a new trial on the basis that

**2.** In that order, the court below found as follows:
  In short, the [appellant] alleges that his employer was conducting its business in an illegal manner and summarily dismissed the Plaintiff when he threatened to take action in an effort to stop the above-noted practice. We believe that these allegations are material and appropriate to the Plaintiff's cause of action. Certainly a dismissal resulting from an attempt to correct illegal business activities would "strike at the heart of a citizen's social right, duty and responsibility." (Citations omitted)

the lower court acted without authority by essentially entering an involuntary nonsuit as to his wrongful discharge claim.

Contrary to appellant's position, we find that he lacks a cause of action for wrongful discharge on both procedural and substantive grounds. Consequently, the above mentioned arguments, which are contingent upon the existence of that claim, are without merit.

Appellant argues that there are two recognized bases for a claim of wrongful discharge in at-will employment relationships: First, when the termination threatens clear mandates of public policy; Second, when the discharge is based on specific intent to harm.

With respect to appellant's wrongful discharge claim on the basis that it violates public policy, we hold that it fails both procedurally and substantively. Pennsylvania Rule of Civil Procedure 1019(a) provides that "[t]he material facts on which a cause of action or defense is based shall be stated in a concise and summary form." It is not necessary that the plaintiff identify the specific legal theory underlying the complaint. *Burnside v. Abbott Laboratories*, 351 Pa.Super. 264, 276, 505 A.2d 973, 980 (1985); *Weiss v. Equibank*, 313 Pa.Super. 446, 453, 460 A.2d 271, 275 (1983). Pa.R.C.P. 1019(a) has been construed to mean that the complaint must not only apprise the defendant of the claim being asserted, but it must also summarize the essential facts to support the claim. *Dickerson v. Brind Truck Leasing*, 362 Pa.Super. 341, 524 A.2d 908, 910 (1987); *Burnside*, 351 Pa.Super. at 276, 505 A.2d at 980; *Weiss*, 313 Pa.Super. at 451, 460 A.2d at pp. 274–75; *Alpha Tau Omega Fraternity v. University of Pennsylvania*, 318 Pa.Super. 293, 298, 464 A.2d 1349, 1352 (1983). We recognize the proposition that the Rules of Civil Procedure are to be liberally interpreted. *See,* Pa.R.C.P. 126. "However, liberal construction does not entail total disregard of those rules concerning pleading." *Duquesne Light Co. v. U.S. Indus. Fabricators*, 334 Pa.Super. 444, 447, 483 A.2d 534, 536 (1984).

■ A purpose behind the rules of pleading is to enable parties to ascertain, by utilizing their own professional discretion, the claims and defenses that are asserted in the case. This purpose would be thwarted if courts, rather than the parties, were burdened with the responsibility of deciphering the cause of action from a pleading of facts which obscurely support the claim in question. Parties ought not be allowed to delegate their duties under the Rules of Civil Procedure to our courts.

■ After carefully examining appellant's complaint, we find that the facts pleaded are insufficient to support a claim for wrongful discharge on public policy grounds. In the complaint, appellant avers that appellees were engaged in unlawful activity by inflating their bills to contractual parties, and that appellant's job was terminated for informing appellees that he would report their conduct to proper authorities. His complaint is structured with those facts immediately preceding these statements:

> The termination of [appellant's] employment with [appellees] was intentional, wrongful and without justification. The termination of [appellant's] employment was retaliatory in nature and for the purpose and intent of harming [appellant], all as a result of [appellant's] expressed willingness to advise proper authorities of [appellees'] unlawful business practices.

Appellant's Complaint p. 4.

In its June 23, 1989, ruling of appellees' preliminary objections, the lower court determined that a dismissal resulting from an attempt to correct illegal business activities would "strike at the heart of a citizen's social right, duty and responsibility." (citation omitted). It implicitly ruled that appellant had set forth facts in his complaint to support a claim for wrongful discharge on public policy grounds. Trial Court's Order of June 23, 1989 p. 3. Courts have a duty to discover from the facts alleged in a complaint the cause of action, if any, stated therein. *Burnside,* 351 Pa.Super. at 276, 505 A.2d at 980. Even though we embrace this responsibility,

for reasons already discussed, we reject the notion that parties should thereby be relieved of their own duties under the Rules of Civil Procedure. When reading words, such as, "intentional," "wrongful," and "for the purpose of harming" in conjunction with the averments, we conclude that appellant has failed to plead a cause of action for wrongful discharge on public policy grounds.[3] Instead, we find that this language warrants a claim for wrongful discharge solely on the basis of a specific intent to harm. Although appellees may have been on notice of an assertion of public policy due to the lower court's pre-trial order, "[appellant] cannot escape [his duty under Pa. R.C.P. 1019(a) ] by a general averment that the facts are in the possession of the defendant." *Id.,* 351 Pa.Super. at 276, 505 A.2d at 980.

Even assuming that appellant satisfied Pa.R.C.P. 1019(a) with respect to his public policy argument, it would be to no avail for substantive reasons. As a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship. *Paul v. Lankenau Hospital,* 524 Pa. 90, 93, 569 A.2d 346, 348 (1990); *Clay v. Advanced Computer Applications, Inc.,* 522 Pa. 86, 88, 559 A.2d 917, 918 (1989); *Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174 (1974). An at-will employee may be terminated for good reason, bad reason, or no reason at all. *Yetter v. Ward Trucking Corp.,* 401 Pa.Super. 467, 585 A.2d 1022, 1025 (1991), *appeal denied,* 529 Pa. 623, 600 A.2d 539 (1991); *Hershberger v. Jersey Shore Steel Co.,* 394 Pa.Super. 363, 366, 575 A.2d 944, 946 (1990) *appeal denied,* 527 Pa. 601, 589 A.2d 691 (1991). "Exceptions to this rule have been recognized in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy." *Clay,* 522 Pa. at 88, 559 A.2d at 918. *See Paul,* 524 Pa. at 93, 569 A.2d at 348; *Yetter,* 401 Pa.Super. at 471, 585 A.2d at 1025; *Hershberger,* 394 Pa.Super. at 366, 575

3. Our opinion addresses the substantive question of a wrongful discharge claim based upon a violation of public policy. As discussed, this cause of action is extremely limited.

A.2d at 946.[4]

■ After scrutinizing the facts before us, we find that no clear mandate of public policy has been threatened nor violated. In *Cisco v. United Parcel Services, Inc.*, 328 Pa.Super. 300, 306, 476 A.2d 1340, 1343 (1984), this Court noted:

> The sources of public policy [which may limit the employer's right of discharge] include legislation; administrative rules, regulation, or decision; and judicial decision. In certain instances, a professional code of ethics may contain an expression of public policy ... Absent legislation, the judiciary must define the cause of action in case-by-case determinations.

*Id.* citing *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 72, 417 A.2d 505, 512 (1980). Appellant contends that courts can make case-by-case determinations of whether a public policy is implicated when there is no piece of legislation directly on point. However, our Supreme Court's decisions in *Clay* and *Paul*, preclude us from undertaking the task of creating and forming public policy with respect to wrongful

---

4. In his concurring opinion in *Clay*, Chief Justice Nix reviewed the holding in *Geary v. United States Steel*, 456 Pa. 171, 319 A.2d 174 (1974) and concluded that a cause of action for wrongful discharge in an at-will employment relationship does not exist. 522 Pa. at 97, 559 A.2d at 923. The Chief Justice reasoned that "a wrongful discharge action would be inimical to the continued existence of at-will employment." *Id.* In *Geary*, our Supreme Court stated:

> The notion that substantive due process elevates an employer's privilege of hiring and discharging his employees to an absolute constitutional right has long been discredited. But this case does not require us to define in comprehensive fashion the perimeters of this privilege, and we decline to do so. We hold only that where a complaint itself discloses a plausible and legitimate reason for terminating an at-will employment relationship and no clear mandate of public policy is violated thereby, an employee at will has no right of action against his employer for wrongful discharge.

*Geary* at 184, 319 A.2d at 180 (footnote omitted). If we were to apply the Chief Justice's interpretation of *Geary* to the instant case, appellant's cause of action for wrongful discharge on both public policy and intent to harm bases would clearly fail. However, we are inclined to follow the majority's opinion in *Clay* and *Paul*, and our decisions in *Yetter and Hershberger*. In those cases, our courts ruled that a cause of action for wrongful discharge in an at-will employment relationship would be recognized in cases where the dismissal would threaten clear mandates of public policy.

discharge on our own initiative. Instead, in order to find a cause of action for wrongful discharge in at-will employment relationships, the discharge must threaten or violate a clear mandate of public policy.[5]

Our review of cases regarding this cause of action reveals that our courts have found a clear mandate of public policy threatened on only three occasions. *Field v. Philadelphia Electric Co.*, 388 Pa.Super. 400, 565 A.2d 1170 (1989) (violation of public policy where discharge was based on performance of duty to report nuclear safety violations under federal statute); *Hunter v. Port Authority*, 277 Pa.Super. 4, 419 A.2d 631 (1980) (violation of the Pennsylvania Constitution to deny public employment to a person on the basis of a prior conviction for which he has been pardoned); *Reuther v. Fowler & Williams, Inc.*, 255 Pa.Super. 28, 386 A.2d 119 (1978) (under Pennsylvania law, a person is statutorily required to serve when called for jury duty for the purpose of having citizens available for trial, and thus a discharge for fulfilling this statutory duty is against public policy). In those cases where our courts recognized a violation of a clear mandate of public policy, the plaintiff demonstrated that a statute or constitution applied to his case and that the discharge resulted from his duty to act in accordance with that applicable law. Since appellant fails to show how any recognized law applies to his case, the instant case is distinguishable from those cases. Here, appellant alleges that appellees' conduct violated a clear mandate of public policy pursuant to Pennsylvania's WhistleBlower Law, 43 Pa.Stat.Ann. sec. 1421 et seq. (1986) (hereinafter "the Act"). However, after analyzing the language of the Act, we conclude that it is inapplicable to the facts in the instant case. The following sections of the Act are relevant to our examination:

5. Interestingly, the lower court in its order of June 23, 1989, determined that the appellant had a viable claim for wrongful discharge on public policy grounds. But, at trial in January, 1992, it found that this claim was without substance. The lower court may have changed its position due to fact that *Clay, Paul, Hershberger,* and *Yetter* had been decided in the interim.

**Section 1423(a) Persons not to be discharged.**—No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.

**Section 1422   Definition**

**Employee**—A person who performs a service for wages or other remuneration under a contract of hire, written or oral, express or implied, for a public body.

**Employer**—A person supervising one or more employees, including the employee in question; a superior of that supervisor; or an agent of a public body.

**Public body**—All of the following:

(1) A State officer, agency, department, division, bureau, board, commission, council, authority or other body in the executive branch of State government.

(2) A county, city, township, regional governing body, council, school district, special district or municipal corporation, or a board, department, commission, council or agency.

(3) Any other body which is created by Commonwealth or political subdivision authority or which is funded in any amount by or through Commonwealth or political subdivision authority or a member or employee of that body.

The Act's scope is limited to employees discharged from governmental entities or any other body which is created or funded by the government. *See Cohen v. Salick Health Care, Inc.,* 772 F.Supp. 1521 (E.D.Pa.1991) (corporation's discharge of employee did not come within public policy exception where corporation was not a public employer) on reconsideration, 1992 WL 7033 (E.D.Pa., Jan. 6, 1992) (initial order shall remain in full force and effect). Appellant was not employed by a public body but by Keypunch, Inc., a private company. There is no evidence to suggest that the company was created or funded by a political body. Although Keypunch, Inc. performed governmental contracts, this is not sufficient to

invoke the application of the Act. We agree with the lower court which reasoned that the legislative branch restricted the language of the Act to "public" rather than "private" entities because "it may well have been concerned with opening up a flood of litigation between the millions of employers and their employees in the private sector." Trial Court Opinion, p. 6. We are not prepared to expand the coverage of the Act into the private arena. Accordingly, we hold that appellant's discharge does not come within the public policy exception to the employment at-will doctrine by virtue of the Act.

■ Appellant also contends that he has a claim for wrongful discharge based on specific intent to harm. Although in several cases prior to *Clay* and *Paul* this Court recognized a cause of action under the specific-intent-to-harm-theory, *see Tourville v. Inter–Ocean Insurance Co.*, 353 Pa.Super. 53, 508 A.2d 1263 (1986), *allocatur denied*, 514 Pa. 619, 521 A.2d 933 (1987); *Darlington v. General Electric*, 350 Pa.Super. 183, 504 A.2d 306, 318 (1986), *Clay* and *Paul* clearly hold that the only exception to the employment at-will doctrine is where the discharge violates clear mandates of public policy. In order to survive a challenge of failure to state a cause of action, the complaint must establish the violation of public policy. *Yetter*, 401 Pa.Super. at 474, 585 A.2d at 1026. Applying the rule of *Clay* and progeny to the facts presented before us, we find that both bases of appellant's claim for wrongful discharge lack substance. We, therefore, affirm the lower court's decision which excluded evidence regarding this claim.

■ Because appellant's wrongful discharge cause of action lacks sufficient substance, or, in the alternative, fails procedurally, his remaining arguments which are contingent upon that claim are without merit. Appellant's sole basis for appealing the issue of unpaid commissions is that he was prejudiced by the lower court's exclusion of the evidence pertaining to the claim for wrongful discharge. The lower court properly ruled in excluding that evidence, and thus we deny appellant's request for a new trial on his claim for unpaid commissions. Similarly, the appellant argues that the exclusion of the evidence regarding the claim for wrongful dis-

charge severely hampered his ability to impeach the credibility of the appellees. Even if appellant had a cause of action, he would have been precluded from introducing evidence of specific bad acts to impeach witnesses. *See Butler v. Flo–Ron Vending Co.*, 383 Pa.Super. 633, 557 A.2d 730, *appeal denied,* 523 Pa. 646, 567 A.2d 650 (1989).

Accordingly, we deny appellant's request for a new trial and affirm the judgment of the court below.[6]

McEWEN, J., concurs in the result.

---

**6.** The appellant also contends that the court below improperly granted an involuntary nonsuit as to his wrongful discharge claim. However, the lower court never acted upon a request for a nonsuit nor did it enter one. Trial Court Opinion, p. 3. Even if its decision to preclude the wrongful discharge claim had the effect of an involuntary nonsuit, as appellant alleges, we hold that it was procedurally harmless to appellant's suit. The lower court found that appellant's claim for wrongful discharge was without substance and correctly dismissed this action, irrespective of the fact that this finding was at the beginning of the trial.