Richard P. **ALTOPIEDI**, Plaintiff,

v.

**MEMOREX TELEX CORPORATION**,
Defendant.

Civ. A. No. 92–5633.

United States District Court,
E.D. Pennsylvania.

Sept. 28, 1993.

Alan B. Epstein, Jablon, Epstein and Wolf, Philadelphia, PA, for plaintiff.

Jerome A. Hoffman, Jeffrey T. Ganiban, Dechert, Price & Rhoads, Philadelphia, PA, for defendant.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Presently before the Court are the motions of defendant Memorex Telex Corporation for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. Plaintiff, Richard P. Altopiedi, has filed a three count complaint with this Court alleging age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* ("PHRA") and a state common law claim for wrongful discharge with a specific intent to harm. Defendant now asks this Court to grant summary judgment with respect to Counts II and III (the claims under PHRA and for wrongful discharge respectively). With respect to Count II, defendant alleges that plaintiff failed to timely file a verified complaint with the Pennsylvania Human Relations Commission ("PHRC") within 180 days after the alleged discrimination occurred as required by section 959(h) of the PHRA, and therefore this Court does not have jurisdiction over this matter. Regarding Count III, defendant argues that the tort of wrongful discharge with a specific intent to harm is not recognized in Pennsylvania. In addition, defendant argues that plaintiff has not adequately alleged any violation of public policy should this Court actually construe plaintiff's claim as alleging the tort of wrongful discharge in violation of public policy.

### Standard

In considering a motion for summary judgment, the court must consider whether the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact, and whether the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P.

56(c). The court is required to determine whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In making this determination, all reasonable inferences must be drawn in favor of the nonmoving party. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2512. While the movant bears the initial burden of demonstrating an absence of genuine issues of material fact, the nonmovant must then establish the existence of each element of its case. *J.F. Feeser, Inc., v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1531 (3rd Cir.1990), *cert. denied,* 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).

### Facts

Plaintiff was discharged from his job as a sales representative with defendant on October 10, 1990 allegedly due to his poor performance and demonstrated cynical attitude towards his supervisor and the performance improvement plan which plaintiff was on for the last five months of his employment. He had previously been hired as an at-will employee on November 16, 1983, at the age of 41.[1]

Plaintiff claims his performance during the first five years of his employment was exemplary. He states that several times during this period, defendant included plaintiff in the Millionaire's Club, where he received an award which was given to sales representatives who exceeded their objectives. He was also named chairman of the Millionaire's Club in 1986. In addition, plaintiff states he consistently received excellent performance evaluations, including a rating of "superior" in 1986 and "above average" in 1988.

Defendant claims that plaintiff's performance was problematic almost from the beginning of his employment. Shortly after he was hired, plaintiff began reporting to a new district sales manager, John Steckbeck, who placed plaintiff on a performance improvement plan when he began experiencing performance problems.[2] Under this plan, plaintiff had to generate a certain number of new accounts and dollars within a specified period of time.

After Steckbeck was transferred in April, 1987, Richard Zywotko became plaintiff's district sales manager and direct supervisor. Zywotko also placed plaintiff on a performance improvement plan.

Following the merger and reorganization of defendant in 1988, Joseph Tordone (age 49) replaced Richard Zywotko (age 34) as plaintiff's district sales manager and direct supervisor. Once again, plaintiff was placed on another performance improvement plan. Defendant alleges that plaintiff failed to satisfy the requirements of this plan or be receptive to Tordone's suggestions and comments. Tordone became very concerned about plaintiff's performance, especially about his alleged poor relationship with people from his major accounts. Defendant also alleges that at this time, Tordone received customer complaints about plaintiff. It was Tordone who eventually terminated plaintiff allegedly because of his unabated performance problems.

Plaintiff claims that following the merger and reorganization of defendant, defendant suffered an overall drop in sales. He further alleges that in June and August 1990, he received written warnings about his performance and criticism about the level of his sales. In July 1990, plaintiff was told that he should "consider resigning."[3] Other younger employees whose sales had also dropped during this time period were not criticized as plaintiff was. Plaintiff states that despite the criticism and warnings, his sales that year were almost sufficient to merit entry into the Millionaire's Club.

---

1. Plaintiff was originally hired by Telex Corporation, which merged with Memorex Corporation in late 1988 to form Memorex Telex Corporation.

2. Plaintiff was originally hired by district sales manager J. David Emery, who was promoted to Regional Vice–President for the geographic region which included plaintiff's territory shortly after plaintiff was hired.

3. Plaintiff does not mention in the complaint or the response to defendant's motion who stated this to him.

Plaintiff also states that in the second half of 1990, the majority of his sales territory was taken away from him by defendant and given to younger sales employees, including Len Dooren and Ray Sikora. As a result, plaintiff alleges he was unable to meet or exceed his sales quota while the younger employees who had received his former territory met their quotas. Additionally, plaintiff claims he was not credited for generating new accounts for sales to a new department of an existing client while other younger employees were credited for such sales. In addition, plaintiff was penalized excessively for the return of equipment which was ordered but not installed.

Plaintiff also alleges that members of defendant's management, including Tordone and David Emery (the person who originally hired plaintiff) made numerous age related comments toward plaintiff. He was referred to as "the silver-haired man," "the aged one," "the oldest man in the crew," and it was suggested that perhaps it was time to put plaintiff "out to pasture." It was also suggested to plaintiff again that he should consider retirement.

At approximately the same time plaintiff was terminated, the Director of Network Services for defendant's National Headquarters nominated plaintiff for the Big Order Award, which was given in recognition of an employee's outstanding sales performance. When he was terminated, plaintiff was replaced by two younger employees in their late twenties. He also states that other employees with the same level or lower levels of sales were retained.

## Discussion

### I. Wrongful discharge with specific intent to harm.

■ We first address defendant's argument with respect to Count III, plaintiff's claim for wrongful discharge with specific intent to harm. At issue in this case is whether Pennsylvania recognizes such a cause of action. Unfortunately, the law in Pennsylvania is not clearcut on this matter, and there are decisions from Pennsylvania courts and courts in this Circuit supporting both parties' propositions. Until the Pennsylvania Supreme Court, however, speaks directly on this issue, we are constrained to predict how Pennsylvania courts would decide this matter. *See Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 360 (3rd Cir.1990). As such, it is necessary to wade through several opinions in order to determine the state of the law.

■ It is well recognized that in Pennsylvania, an employer has the right to fire an at-will employee for any reason, no matter what that reason is. *Krajsa v. Keypunch, Inc.*, 424 Pa.Super. 230, 622 A.2d 355, 358 (1993) (citing *Yetter v. Ward Trucking Corp.*, 401 Pa.Super. 467, 585 A.2d 1022, 1025 (1991); *Hershberger v. Jersey Shore Steel Co.*, 394 Pa.Super. 363, 366, 575 A.2d 944, 946 (1990), *appeal denied*, 527 Pa. 601, 589 A.2d 691 (1991)). Prior to the Pennsylvania Supreme Court's decisions in *Clay v. Advanced Computer Applications*, 522 Pa. 86, 559 A.2d 917 (1989) and *Paul v. Lankenau Hospital*, 524 Pa. 90, 569 A.2d 346 (1990), it was also recognized that there were limited exceptions to the at-will doctrine. One exception was a claim for wrongful discharge in violation of a clear mandate of public policy. *See Krajsa*, 424 Pa.Super. 230, 622 A.2d 355 (1993). Another exception was a claim for wrongful discharge with a specific intent to harm by the employer. *See Tourville v. Inter–Ocean Ins. Co.*, 353 Pa.Super. 53, 508 A.2d 1263 (1986), *allocatur denied*, 514 Pa. 619, 521 A.2d 933 (1987).

Before examining *Clay* and *Paul*, it is necessary to examine the cases that first recognized a cause of action of wrongful discharge with specific intent to harm. In *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974), a former employee of a steel manufacturer alleged he was discharged in retaliation for having told his superiors about the unsafe nature of certain products, which were eventually withdrawn from the market. The employee sought damages for the employer's conduct, alleging it was " 'wrongful, malicious and abusive.' " *Id.* at 174, 319 A.2d at 175. In arguing there should be an exception to the at-will doctrine, the employee suggested using the rationale of other cases such as abuse of process cases that imposed

liability on the actor based upon his motive. *Id.* at 177–78, 319 A.2d at 177.

The Supreme Court discussed the employee's theory, and concluded that such a theory "must surely involve specific intent on the part of the company to harm [the employee] to achieve some other proscribed goal." *Id.* at 178, 319 A.2d at 177. A general intent, the court concluded, would not be sufficient to state a cause of action because some degree of harm is always foreseeable when an employee is fired. The court noted that in this case, however, the employee's allegations did not sufficiently constitute specific intent, therefore he failed to state a claim upon which relief could be granted.

*Tourville v. Inter–Ocean Insurance Co.*, 353 Pa.Super. 53, 508 A.2d 1263 (1986), *allocatur denied*, 514 Pa. 619, 521 A.2d 933 (1987) embraced the cause of action that was espoused in *Geary* and further defined it. The court recognized two distinct ways to determine whether the employer had acted with the specific intent to harm the employee. The first way was if the employer acted with "disinterested malevolence," meaning there was no real reason for the action other than pure, unadulterated malevolence by the employer. *Tourville*, 353 Pa.Super. 53, 508 A.2d 1263, 1265 (1986), *allocatur denied*, 514 Pa. 619, 521 A.2d 933 (1987). The second way was if the employer acted with an "ulterior purpose." *Tourville*, 353 Pa.Super. 53, 508 A.2d 1263, 1266 (1986), *allocatur denied*, 514 Pa. 619, 521 A.2d 933 (1987). In this situation, there could be a legitimate reason for the action, but the employer had the ulterior motive to harm the employee. To determine evidence of an ulterior motive, the court suggested to look for a lack of proportionality; i.e., "that what is harmfully done is beyond the necessity of the justified harmful act." *Id.* Other cases also recognized this cause of action that was espoused in *Geary*. *See generally Mudd v. Hoffman Homes for Youth*, 374 Pa.Super. 522, 543 A.2d 1092, 1096 (1988); *Veno v. Meredith*, 357 Pa.Super. 85, 515 A.2d 571, 577 (1986), *allocatur denied*, 532 Pa. 665, 616 A.2d 986 (1992); *Dar-*

*lington v. General Elec.*, 350 Pa.Super. 183, 504 A.2d 306, 318–19 (1986).

The confusion of the current state of the law surrounding this cause of action stems from two cases decided by the Pennsylvania Supreme Court. The first case is *Clay v. Advanced Computer Applications*, 522 Pa. 86, 559 A.2d 917 (1989). At issue in *Clay* was whether the superior court had erred in reversing the trial court's decision to dismiss plaintiffs' claims seeking damages for wrongful discharge by the employer because the plaintiffs failed to first file a claim with the PHRC. The court agreed with the trial court that under the PHRA, an aggrieved party must first utilize administrative remedies before seeking judicial remedies under the PHRA. *Clay*, 522 Pa. 86, 559 A.2d 917, 918 (1989). In stating its reasoning, the court, *in dictum*, stated:

> [i]t should be noted that, as a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship. . . . Exceptions to this rule have been recognized in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy.

*Id.* (citations omitted).

*Paul v. Lankenau Hospital*, 524 Pa. 90, 569 A.2d 346 (1990) followed *Clay* shortly thereafter. In *Paul*, a doctor had been fired from his place of employment following his act of removing five refrigerators from the hospital, which he claimed he had express permission to do. A jury found in favor of the doctor on the grounds of estoppel and detrimental reliance, which was affirmed by the superior court. At issue before the Pennsylvania Supreme Court was whether the court should reverse the judgment on the ground that estoppel was not a legal exception to the at-will employment doctrine, and therefore whether it was error for that issue to have gone to the jury.[4]

In making its determination, the court was urged by the doctor to read *Geary* as stating that certain exceptions to the at-will employ-

---

4. The court also considered another issue regarding defamation but that is not relevant to our discussion here.

ment doctrine existed. The court stated that in *Geary*, its holding was "that while some exceptions to the at-will employment doctrine might exist, especially in public policy areas, 'this case does not require us to define in comprehensive fashion the perimeters of this privilege, and we decline to do so.'" *Paul*, 524 Pa. 90, 569 A.2d 346, 348 (1990) (citations omitted). The court also noted that in *Geary*, it had negatively answered the question of whether the time had come to impose judicial restraint on the employer's power to discharge. *Id.* Quoting the above language in *Clay*, the *Paul* court further noted that *Clay* was a reaffirmation of *Geary*. Thus, the court held that estoppel was not an exception to the employment at-will doctrine.

It is clear from examining the above decisions that a cause of action for wrongful discharge with specific intent to harm still exists even after the Pennsylvania Supreme Court's decisions in *Clay* and *Paul*. Neither of these two cases dealt with the specific issue of whether this particular cause of action existed. The language in *Clay* stating that the only exception to the employment at-will doctrine was a cause of action for wrongful discharge in violation of public policy, was merely dictum. Further, the court did not rule out the possibility in *Paul* that there were exceptions to the employment at-will doctrine, it only ruled that estoppel was not one of these exceptions. Thus, until the Pennsylvania Supreme Court specifically decides that there is no such cause of action of wrongful discharge with specific intent to harm, we will continue to agree with *Tourville* and its progeny that such a cause of action exists.

As previously mentioned, there are cases which have held that after *Clay* and *Paul*, a cause of action for wrongful discharge with specific intent to harm does not exist. *See Krajsa v. Keypunch, Inc.*, 424 Pa.Super. 230, 622 A.2d 355, 360 (1993) (holding that after *Clay* and *Paul*, a complaint must clearly establish a violation of public policy in order to bring a claim for wrongful discharge); *see also Brown v. St. Luke's Hosp.*, 816 F.Supp. 342, 344 (E.D.Pa.1993); *Asko v. Bartle*, 762 F.Supp. 1229, 1233–34 (E.D.Pa.1991). It is clear that these courts are reading *Clay* to

mean that no other exception to the at-will doctrine exists aside from a cause of action for wrongful discharge in violation of public policy. While that interpretation is feasible, it is not proper given the existence of *Geary* and *Tourville*. Moreover, we emphasize, that *Clay* and *Paul* were not dispositive of the issue before us, thus, *Geary* and *Tourville* are still good law. Other courts have agreed with this analysis. *See e.g. Foley v. Presbyterian Ministers' Fund*, 749 F.Supp. 109 (E.D.Pa.1990); *Booth v. McDonnell Douglas Truck Serv., Inc.*, 401 Pa.Super. 234, 585 A.2d 24, 28 (1991), *allocatur denied*, 528 Pa. 620, 597 A.2d 1150 (1991) (recognizing a cause of action of wrongful discharge with specific intent to harm).

■ Having held that there exists a cause of action for wrongful discharge with specific intent to harm, we also hold that defendant is not entitled to summary judgment with respect to Count III because a genuine issue of material fact exists as to whether plaintiff was discharged by defendant with a specific intent to harm. Plaintiff alleges there was malice in this case because defendant purposefully took away the most lucrative portions of his sales territory and also reviewed his sales records on a monthly basis, rather than on a quarterly or yearly basis. He contends that this was done to insure that he would not be able to meet the sales and new client quotas imposed on him. Plaintiff's Response to Defendant's Motion for Summary Judgment, page 7. Plaintiff also alleges "there was an overall drop in sales at defendant and plaintiff's sales were criticized, although the younger salespersons also had limited sales and were not criticized in the same way." Plaintiff's Complaint, para. 19. Plaintiff further alleges that as a result of his territory being taken away from him, that other younger associates were able to make their sales quotas. Plaintiff's Complaint, para. 20.

Taking the facts as alleged by plaintiff as true, as we must, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986), a genuine issue of material fact exists as to whether defendant's actions were the result of sheer malice, or whether plaintiff was in fact discharged be-

cause of improper performance. Because defendant has not adequately shown the reasons for the discharge, it has not sustained its burden necessary for the grant of summary judgment with respect to this issue.

## II. Lack of Jurisdiction over Count II of plaintiff's complaint

Defendant also alleges that summary judgment should be granted in its favor with respect to Count II, plaintiff's claim under the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* Defendant notes that plaintiff filed his complaint with the PHRC on the 181st day after the alleged discriminatory act occurred, and therefore failed to timely file a complaint within 180 days of the alleged discriminatory act as required by the PHRA. 43 P.S. § 959(h) (Supp.1993). As such, defendant argues that this Court does not have jurisdiction over this matter because plaintiff failed to exhaust his administrative remedies before filing a complaint with this Court.

■ Section 959(h) of the PHRA states "Any complaint filed pursuant to this section must be so filed within one hundred eighty days after the alleged act of discrimination, unless otherwise required by the Fair Housing Act." 43 P.S. § 959(h) (Supp.1993). Further, the statute states that "[t]he time limits for filing under any complaint or other pleading under this act shall be subject to waiver, estoppel and equitable tolling." 43 P.S. § 962(e) (Supp.1993). Thus, even though plaintiff missed the 180 day deadline by filing his complaint on the 181st day, the clear language of the statute allows for equitable tolling.

Defendant argues that the statute does not permit equitable tolling, but rather, that the timely filing of a complaint is a jurisdictional requirement to bringing a civil action under the PHRA. Defendant relies on *Vincent v. Fuller Co.*, 532 Pa. 547, 616 A.2d 969 (1992) and *Clay v. Advanced Computer Applications, Inc.*, 522 Pa. 86, 559 A.2d 917 (1989) to support its position. These cases are not applicable to this situation, however. In both *Vincent* and *Clay*, the courts were applying

the pre-amended version of the statute which did not include the above language in section 962(e).[5] Thus, the courts did not even consider whether or not equitable tolling was permissible under the statute. Moreover, in *Clay*, the plaintiffs did not file a complaint with the PHRC *at all* before filing a complaint alleging sexual harassment and discrimination with the Court of Common Pleas of Bucks County. On that basis, the Supreme Court of Pennsylvania held that plaintiffs could not bring an action seeking judicial recourse because they had not availed themselves of the procedures set out in the PHRA, which initially gave the PHRC jurisdiction over these matters.

Unlike the plaintiffs in *Clay*, plaintiff in the present matter did file a complaint with PHRC, albeit untimely, before seeking judicial recourse in this Court. Thus, the only issue is whether or not equitable tolling should be permitted to apply in this case.

■ There are basically three reasons for allowing equitable tolling. First, it is allowed where the plaintiff actively pursues his judicial remedies but files a defective pleading during the statutory period, such as filing in the wrong forum. *Irwin v. Veterans Affairs*, 498 U.S. 89, 94–97, 111 S.Ct. 453, 457–58, 112 L.Ed.2d 435 (1990); *Kocian v. Getty Refining & Marketing Co.*, 707 F.2d 748, 753 (3rd Cir.1983), *cert. denied*, 464 U.S. 852, 104 S.Ct. 164, 78 L.Ed.2d 150 (1983). Second, it is allowed where the deadline for filing has passed due to the plaintiff's reliance on his adversary's misconduct or misrepresentation. *Irwin*, 498 U.S. at 96, 111 S.Ct. at 458; *Kocian*, 707 F.2d at 753. Finally, it is allowed where the plaintiff has been prevented from asserting his rights in some "extraordinary way." *Kocian*, 707 F.2d at 753. Courts generally disfavor equitable tolling where the plaintiff missed the deadline because of a lack of due diligence. *Irwin*, 498 U.S. at 96, 111 S.Ct. at 458 (holding that where plaintiff filed Title VII complaint with district court late because his attorney was out of town when the E.E.O.C.'s right to sue letter was delivered to his office was not an adequate reason to justify equitable tolling).

**5.** Section 962(e) was added to the statute in 1991.

Plaintiff states that he is entitled to equitable tolling because he made good faith efforts to file his complaint in a timely manner, but that the complaint was filed untimely due to the error and inefficiency of the PHRC. Plaintiff states that he originally went to the PHRC sometime in March 1991 after being fired on October 10, 1990. At that time, the PHRC told him to fill out a questionnaire, which would be incorporated into a formal complaint (or charge). The questionnaire was sent to plaintiff on April 1, 1991 and he was told to fill it out and return it to the PHRC within five days. Plaintiff filled out the questionnaire and gave it to the PHRC on April 6, 1991, which was the 178th day after he was fired. On April 9, 1991, plaintiff was requested by the PHRC to sign the formal charge, which was the 181st day after his firing.

Defendant urges that this case is similar to *Kocian*, where equitable tolling was not allowed. In *Kocian*, the plaintiff went to the E.E.O.C. to file a complaint of discrimination and began drafting a charge with the E.E.O.C. counselor. On the 178th day after plaintiff's discharge, the counselor called plaintiff to review the proposed charge and told her he would send it to her for signing. He did not send it to her until the 181st day, whereupon she took it to her lawyer and together they made corrections for over a week. After plaintiff sent the proposed charge back to the E.E.O.C. counselor, the counselor revised it and sent it to plaintiff for signing on the 201st day, which plaintiff returned on the 205th day. The plaintiff claimed that because the E.E.O.C. counselor sent her letters and the charges after the 180 day period of limitations had ended, she was misled into believing that the E.E.O.C. was applying the 300 day limitation period to her instead of the 180 day period.

The court rejected this argument, and stated that this was not a case of extraordinary circumstances which prevented plaintiff from filing the complaint, particularly because she admitted to knowing about the 180 day period before she went to the E.E.O.C. Moreover, the E.E.O.C. did not mislead her in any way. The court noted that after receiving the proposed charge the first time:

[h]ad Ms. Kocian simply signed and returned the charge to the E.E.O.C. without further delay, a different picture might have been presented. [Plaintiff] could have argued that the fact that the charge was several days past the 180 limit was more because of bureaucratic delay than because of her own neglect. Indeed she would have essentially completed all of her responsibilities in filing the charge, except for formally signing it, within 180 days.

*Id.* at 754.

Defendant is incorrect in its assertion that this case is similar to *Kocian*. Unlike the plaintiff in *Kocian*, plaintiff here made a good faith effort to file the charge within the 180 day time period. In effect, everything except signing the charge had been completed within that time period. Thus, plaintiff successfully asserts that there were extraordinary circumstances that prevented him from filing on time. In this case it was the bureaucratic delay of the PHRC which requested plaintiff to sign the charge on the 181st day. Plaintiff's failure to file was not the result of unexcusable neglect. As such, equitable tolling is justified in this case and this Court has jurisdiction because plaintiff has exhausted his administrative remedies. *See also Nestor v. Quaker State Coca–Cola Bottling Co.,* 579 F.Supp. 289 (W.D.Pa.1984) (plaintiff complied with administrative remedies even though PHRC dismissed plaintiff's complaint as untimely, therefore defendant's motion for summary judgment concerning court's lack of jurisdiction over claim arising under PHRA was rejected).

In conclusion, defendant's motions for summary judgment will be denied. First, Pennsylvania does recognize a cause of action for wrongful discharge with specific intent to harm, and defendant has not shown that no genuine issue of material fact exists entitling it to summary judgment on that claim. Second, this Court has jurisdiction over the claim arising under the PHRA because the doctrine of equitable tolling applies in this case, so that plaintiff was not time-barred for filing the complaint with the PHRC after the 180 day limitation. An appropriate order follows.

*ORDER*

AND NOW, this 27th day of September, 1993, upon consideration of defendant's Motion for Summary Judgment on Count III of plaintiff's complaint, and defendant's Supplemental Motion for Summary Judgment on Count II of plaintiff's complaint, and all responses thereto, it is hereby ORDERED that both of defendant's motions are DENIED.