Norman J. GALLANT, Plaintiff,

v.

BOC GROUP, INC., Defendant.

Civ.A. No. 93–30081–MAP.

United States District Court,
D. Massachusetts.

May 17, 1995.

Edward N. Marasi, Marasi & Franco, West Springfield, MA, for Norman J. Gallant.

Joan I. Ackerstein, Robin A. Schaja, Jackson, Lewis, Schnitzler & Krupman, Boston, MA, for BOC Group, Inc.

### ORDER

PONSOR, District Judge.

For the reasons stated in the accompanying Memorandum, Defendant's Motion for Summary Judgment is hereby ALLOWED as to Counts I, II, and III and DENIED as to Count IV.

### MEMORANDUM REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Docket No. 37)

### I. INTRODUCTION

Former sales representative, plaintiff Norman Gallant, challenges the termination of his employment from defendant BOC Group, Inc. ("BOC") on March 18, 1991.[1] Plaintiff alleges that defendant wrongfully terminated his employment because he complained of antitrust violations and because he refused to participate in the alleged illegal scheme. In plaintiff's amended complaint, he asserts violations of the Robinson Patman Act, 15 U.S.C. § 13 and Section 4 of the Clayton Act, 15 U.S.C. § 15 (Count I); a violation of the Pennsylvania Whistle Blowers Act, 43 PA. STAT. § 1423(a) (Count II); intentional infliction of emotional distress (Count III), and a discharge in violation of public policy (Count IV).

Defendant now moves for summary judgment on all four counts. For the reasons set forth below, the court will allow defendant's motion for summary judgment on Counts I, II, and III, and deny summary judgment on Count IV.

### II. SUMMARY JUDGMENT STANDARD

█ Summary judgment is appropriate where the record reveals no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter as law. Fed.R.Civ.P. 56(c). A factual dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir.1988), quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

█ Although the court must view the record favorably to the nonmoving party, the nonmoving party must set forth "specific facts sufficient to demonstrate that every essential element of its claim or defense is at least trialworthy." *Catrone v. Thoroughbred Racing Associations*, 929 F.2d 881, 884 (1st Cir.1991). Trialworthiness necessitates that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve." *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir. 1989).

---

1. Plaintiff filed this action on March 1, 1993 in the Superior Court. BOC removed the action to this court on April 19, 1993.

## III. FACTUAL BACKGROUND

The facts, as alleged by plaintiff, are as follows.

BOC Group, through its wholly owned division Airco Gases, is engaged in the business of selling bulk industrial gases. BOC is a private, for-profit company, and is not funded by the state of Pennsylvania. Gallant was employed as a technical sales representative for the defendant from January 1990 through March 1991. Plaintiff claims that while employed at BOC he had a good working relationship with his supervisor, James Brazelton, and was an outstanding salesperson.

Gallant alleges that in the course of his employment he became aware that defendant was engaged in price-fixing in violation of federal and state antitrust laws. Specifically, plaintiff alleges that BOC requested information about competitors' prices from potential customers and prospective employees and then agreed with its competitors not to compete with certain businesses. Gallant avers that he complained to his supervisor about the alleged antitrust violations orally and in writing and was terminated within weeks of making these complaints. Gallant further avers that BOC threatened that it would withhold payment of legitimate business expenses owed to him and would dispute the plaintiff's unemployment claim if he did not sign a separation letter releasing BOC from all claims. In fact, defendant did not pay the business expenses it owed and did contest his unemployment claim.

The Unemployment Board granted Gallant unemployment compensation, and the hearing examiner made a finding of fact that the plaintiff was a good sales representative and had no problems until he complained that Airco was violating state and federal law. Gallant maintains that he suffered serious emotional distress as a result of defendant's actions.

This court will now address each of plaintiff's four counts.

## IV. DISCUSSION

### A. Antitrust Standing

In Count I, plaintiff asserts an antitrust claim against BOC under Section 4 of the Clayton Act, codified as 15 U.S.C. § 15. This provision of the Clayton Act provides, in relevant part, that

> [a]ny person who shall be injured in his business or property by reason of *anything forbidden in the antitrust laws* may sue therefor ... and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

15 U.S.C. § 15 (emphasis added).

Plaintiff claims that BOC committed an antitrust violation by violating subsection (a) of the Robinson Patman Act, 15 U.S.C. § 13. Subsection (a) states that:

> It shall be unlawful for *any person* engaged in commerce ... either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality ... and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce or to injure, destroy or prevent competition with any person who either grants or knowingly receives the benefits of such discrimination, or with customers of either of them.

§ 13(a) (emphasis added).

BOC maintains that Gallant lacks standing to bring an antitrust claim under the Clayton and Robinson Patman Acts. Thus, even assuming *arguendo* that defendant violated the antitrust laws, this court must first determine whether Gallant is the proper party to bring a private antitrust action. *Associated General Contractors of Cal., Inc. v. California State Council of Carpenters,* 459 U.S. 519, 535 n. 31, 103 S.Ct. 897, 907 n. 31, 74 L.Ed.2d 723 (1983).

■ The Supreme Court has held that Section 4 of the Clayton Act does not "allow every person tangentially affected by an antitrust violation to maintain an action to recover threefold damages for the injury to his business or property." *Blue Shield of Va. v. McCready,* 457 U.S. 465, 477, 102 S.Ct. 2540, 2547, 73 L.Ed.2d 149 (1982). Instead, the Court has established a comprehensive antitrust standing doctrine to determine which persons are entitled to bring suit under the

Clayton Act. *Associated General,* 459 U.S. at 529–35, 103 S.Ct. at 903–07, 74 L.Ed.2d 723 (1983); *Sullivan v. Tagliabue,* 25 F.3d 43, 45 (1st Cir.1994). *See also SAS of Puerto Rico, Inc. v. Puerto Rico Telephone Co.,* 48 F.3d 39 (1st Cir.1995). The factors set forth in *Associated General* include: (1) the causal connection between the alleged antitrust violation and harm to the plaintiff; (2) an improper motive; (3) the nature of the plaintiff's alleged injury and whether the injury was of a type that Congress sought to redress with the antitrust laws ("antitrust injury"); (4) the directness with which the alleged market restraint caused the asserted injury; (5) the speculative nature of the damages, and (6) the risk of duplicative recovery or complex apportionment of damages. *Sullivan,* 25 F.3d at 46, citing *Associated General,* 459 U.S. at 537–45, 103 S.Ct. at 908–12.[2] These factors must be evaluated and weighed on a case-by-case basis. *Id.*

### 1. *Antitrust Injury*

The court must first examine whether there is in fact an antitrust injury, that is, whether the alleged injury is of the type that the antitrust laws were designed to redress. *Associated General,* 459 U.S. at 538, 540, 103 S.Ct. at 908, 909. The First Circuit has stated that consideration of antitrust injury is a central factor in the standing calculus. *Sullivan,* 25 F.3d at 47. *See, e.g., Balaklaw v. Lovell,* 14 F.3d 793, 797–98 & n. 9 (2d Cir.1994); *Todorov v. DCH Healthcare Auth.,* 921 F.2d 1438, 1449 (11th Cir.1991).

 In general, "competitors" or "consumers" are presumptively the favored plaintiffs to allege antitrust injury in the market in which the trade was restrained. *SAS,* 48 F.3d at 45. Gallant does not bring his claim as either a competitor or a consumer but as an employee whose injuries resulted from the loss of his employment. Furthermore, employees of alleged antitrust violators, such as Gallant, are on the list of presumptively disfavored plaintiffs, i.e., persons who may be

derivatively injured, but are denied standing to sue. *Id.*

 There may be some instances when presumptively disfavored plaintiffs do have standing to bring an antitrust action. *Id.* In *SAS,* the court stated that although competitors and consumers are presumptively favored, " 'presumptively' does not mean always; there can be exceptions, for good cause shown." *Id.* This exception does not apply in this instance. The "most obvious reason for conferring standing on a second-best plaintiff is that … there may be no first best with the incentive to sue." *Id.; cf. Associated General,* 459 U.S. at 542, 103 S.Ct. at 910. In this situation, competitors and consumers have both the incentive and an ample opportunity to bring an antitrust claim. There is no reason to extend the doctrine of antitrust standing to Gallant, an individual incidentally connected to the antitrust violation.

Some courts have interpreted the Supreme Court's decision in *Blue Shield v. McCready* as extending standing to a third category of individuals whose injury is inextricably intertwined with the injury that the antitrust violators sought to inflict. *See Ashmore v. Northeast Petroleum Div.,* 843 F.Supp. 759, 760–70 (D.Me.1994); *Ostrofe v. H.S. Crocker Co.,* 740 F.2d 739 (9th Cir.1984). One year prior to *Associated General,* the *McCready* court held that a consumer of health services could sue under the antitrust laws to redress a supposed conspiracy between her insurance plan and Virginia psychiatrists. The plan excluded psychologists from receiving compensation under the plan. Although McCready was not the immediate target of the alleged boycott, she was a plan beneficiary who had used a psychologist and had been denied reimbursement. The Supreme Court said that McCready's injury "was inextricably intertwined with the injury the conspirators sought to inflict on psychologists and the psychotherapy market," and was granted standing. *McCready,* 457 U.S. at 484, 102 S.Ct. at 2551. The Court further stated that

---

**2.** In *Associated General,* the Court found that two factors, the causal connection between the plaintiff's alleged injuries and the violation of antitrust laws, and the allegation of improper motive, sup-

ported a grant of standing, and that a consideration of the remaining factors necessitated the denial of standing. *Id.* at 545, 103 S.Ct. at 912.

McCready was the "necessary step in effecting the ends of the alleged illegal conspiracy." *Id.* at 479, 102 S.Ct. at 2548.

It is doubtful that the language in *McCready* was ever intended as a legal test of standing. *SAS,* 48 F.3d at 46. Moreover, in *McCready,* while standing was conferred to a plaintiff who was only derivatively injured, it is important to highlight that the plaintiff was a *consumer* in the very market directly affected by the antitrust violation. In adopting the antitrust standing doctrine, the Court in *Associated General* simply reinterpreted the *McCready* language as a legal conclusion; i.e., applying the "inextricably intertwined" standard to consumers and competitors. *See SAS,* 48 F.3d at 46. Although some courts have conferred standing on individuals who are neither consumers or competitors,[3] in light of the analysis set forth in *SAS,* this court is not inclined to expand upon the doctrine of standing currently in place in this circuit.

■ Even under a broad reading of *McCready,* it is clear that Gallant's termination was not a necessary instrument to effectuate the alleged conspiracy. *McCready,* 457 U.S. at 479, 102 S.Ct. at 2548. Here, plaintiff's sole involvement with BOC was as an employee, and, as such, he is not the appropriate plaintiff. *See SAS,* 48 F.3d at 45. In this instance, termination of employment of a "second-best" plaintiff is not the type of injury the antitrust laws were enacted to protect. *SAS,* 48 F.3d at 45.

2. *Directness of Injury and Causal Nexus*

Two additional and related factors set forth in *Associated General* are (1) the causal connection between the alleged antitrust violation and the harm to the plaintiff and (2) the directness of the asserted injury. *Asso-*

*ciated General,* 459 U.S. at 542, 103 S.Ct. at 910.

The first inquiry is whether there was a causal connection between BOC's alleged antitrust violation and Gallant's discharge. Plaintiff satisfies the first inquiry. Plaintiff contends that if not for the implementation of the allegedly illegal scheme, he would not have had to resist such conduct and, consequently he would not have been discharged. Clearly the two events are causally related.

■ However the existence of a causal connection alone is not enough. Any causal connection between the alleged violations and Gallant's discharge is not sufficiently direct to make the discharge itself an antitrust violation. *Reitz v. Canon U.S.A., Inc.,* 695 F.Supp. 552, 553 (S.D.Fla.1988). Gallant alleges that his loss of employment was a direct consequence of the alleged anticompetitive behavior. But the facts, even when viewed in the light most favorable to the plaintiff, do not support his contention. While Gallant claims that his loss of employment occurred in furtherance of defendant's illegal acts, the employment market was not the target of the alleged anticompetitive violations. The purpose of the alleged scheme was to prevent price competition for customers, not to prevent plaintiff's employment. Even assuming that plaintiff's allegations are true, the termination of his employment is only a "byproduct" of the agreement not to compete. *Fallis v. Pendleton Woolen Mills, Inc.,* 866 F.2d 209, 211 (6th Cir.1989).[4] More direct victims existed. Any injury to plaintiff is merely incidental to the alleged agreement to prevent price competition for customers. Moreover, plaintiff has made no showing that the price fixing scheme was intended to harm him in any way.

3. *Ashmore v. Northeast Petroleum Div.,* 843 F.Supp. 759, 760–70 (D.Me.1994) (employees discharged in retaliation for their failure to violate the antitrust laws sustained "antitrust injury" and had standing to sue.)

4. In *Fallis,* the court held that a sales representative lacked standing to maintain an antitrust action against his former employer based on a claim that he was discharged because he refused

to participate in a vertical price fixing scheme. The court stated that although the representative's alleged role as a "fulcrum" for employer's pressure on discounters weighed in favor of standing, this factor was outweighed by indirectness of his injury, existence of more direct victims, and resulting danger of double recovery or complex apportionment of damages. *Fallis,* 866 F.2d at 212.

### 3. Speculative Nature of Damages, Duplicative Recovery and Complex Apportionment of Damages

Under *Associated General*, courts are also required to consider whether a "claim rests at bottom on some abstract conception or speculative measure of harm." *Associated General*, 459 U.S. at 543, 103 S.Ct. at 911, citing *McCready*, 457 U.S. at 475, n. 11, 102 S.Ct. at 2546, n. 11. In his complaint, plaintiff asserts that he suffered compensatory damages due to his inability to get sales, lack of business, and wrongful termination. He also seeks treble damages as provided by the Clayton Act, punitive damages for wrongful termination, and attorney's fees and other costs and expenses. There is no question that many of the requested damages are quantifiable.

Although plaintiff's damages are not necessarily speculative, "if the court were to allow all indirect victims standing to sue, the dangers of duplicative recovery and complex apportionment of damages would become very real." *See Fallis*, 866 F.2d at 211–12, citing *Province v. Cleveland Press Publishing Co.*, 787 F.2d 1047 (6th Cir.1986). *See also Southaven Land Co. v. Malone & Hyde, Inc.*, 715 F.2d 1079, 1087 (6th Cir.1983) ("Particularly, indirect injuries may render damages highly speculative or create situations of complexity that would foreclose an equitable determination and apportionment of damages."). This is so because remote and direct plaintiffs potentially would be asserting conflicting claims over a common fund.

 In sum, even if plaintiff is correct in his allegations concerning defendant's conduct, his injury cannot be redressed under the Clayton and Robinson Patman Acts. The relevant factors—the nature of Gallant's injury, the existence of more direct victims of the alleged violations and the risk of duplicative recovery and complex apportionment of damages—weigh heavily against judicial enforcement of plaintiff's claims. Summary judgment will therefore be granted on this count.

### B. Pennsylvania Whistle Blowers Act

Plaintiff alleges that BOC's conduct violated the Pennsylvania Whistle Blowers Act, 43 PA.STAT. § 1423(a). The Act provides that:

> no employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee . . . makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.

 By its own terms, the Act's scope is limited to employees discharged from governmental entities or any other "public body" which is created or funded by the government. § 1422.[5] *See also Krajsa v. Keypunch, Inc.*, 424 Pa.Super. 230, 622 A.2d 355 (1993). BOC is a private corporation and is not funded in any way by the Commonwealth of Pennsylvania. For this reason, the Pennsylvania Whistle Blower's Act is inapposite in the instant case.[6] Summary Judgment will therefore be granted on Count II.

### C. Intentional Infliction of Emotional Distress

 Plaintiff's claim for intentional infliction of emotional distress is precluded by the exclusivity provision of the Pennsylvania Workers' Compensation Act, 77 PA.STAT. § 481(a). The Workers' Compensation Act is the exclusive remedy for "any work related injury." *Poyser v. Newman & Co.*, 514 Pa.

---

**5.** "Public bodies" is defined as all of the following:
(1) A State officer, agency, department, division, bureau, board, commission, council, authority or other body in the executive branch of State Government; (2) A county, city, township, regional governing body, council, school district, special district or municipal corporation, or a board, department, commission, council or agency; (3) any other body which is created by Commonwealth or political subdivision authority or which is funded in any amount by or through Commonwealth or political subdivision authority or a member or employee of that body. 43 P.S. § 1422.

**6.** Moreover, in the opposition to defendant's motion for summary judgment, plaintiff essentially concedes that the plaintiff is not entitled to protection under the Pennsylvania Whistle Blowers Act.

32, 36, 522 A.2d 548 (1987), citing *Kline v. Arden H. Verner Co.*, 503 Pa. 251, 253, 469 A.2d 158 (1983). The exclusivity provision of the workers' compensation statute provides, in relevant part, that "liability of an employer under this act shall be exclusive and in place of any and all other liability . . . on account of any injury or death. . . ." § 481(a). Thus, an employee waives his right of action at common law with respect to any injury that is compensable under this chapter.[7]

Work related injuries arising out of intentional torts are no exception to the exclusivity provision. *Poyser*, 514 Pa. at 36, 522 A.2d 548. Thus, injuries arising out of intentional torts, including the intentional infliction of emotional distress, committed in the course of an employment relationship must be brought under the administrative scheme set forth in the worker's compensation statute and are precluded at common law. *Whitney v. Xerox Corp.*, 1994 WL 412429 at * 5 (E.D.Pa. August 2, 1994) (employee's claim that he suffered severe emotional distress as a result of employer's actions to force his resignation was barred by the Workers' Compensation Act). Plaintiff's allegations that BOC refused to pay him certain expenses and threatened to contest his claim for unemployment arise out of their employment relationship and therefore are barred by the exclusivity provision of the worker's compensation act. Accordingly, BOC is entitled to judgment on Count III of plaintiff's complaint.

Moreover, in order to prevail under a common law theory of intentional infliction of emotional distress, plaintiff must show that the conduct was "so outrageous and extreme that it goes beyond all bounds of decency and would be regarded as atrocious and utterly intolerable in a civilized community." *Gonzalez v. CNA Ins. Co.*, 717 F.Supp. 1087, 1088 (E.D.Pa.1989) (employee's claim that employer falsely accused him of sexually harassing employee insufficient to support a claim for intentional infliction of emotional distress); *Cox v. Keystone Carbon*

*Co.*, 861 F.2d 390, 395 (3rd Cir.1988), *appeal after remand*, 894 F.2d 647 (3rd Cir.1990), *cert. denied*, 498 U.S. 811, 111 S.Ct. 47, 112 L.Ed.2d 23 (1990) (employer's discharge of employee on first day back to work after triple bypass heart surgery insufficient to support a claim for intentional infliction of emotional distress). In Pennsylvania, "[i]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to support a claim for intentional infliction of emotional distress." *Glickstein v. Consolidated Freightways*, 718 F.Supp. 438, 441 (E.D.Pa.1989).

Defendant's refusal to allow plaintiff to obtain unemployment compensation or his legitimate expenses and its alleged demand that plaintiff sign a release, as a matter of law, do not rise to the required level of outrageousness.

For all these reasons, summary judgment will be granted on Count III.

### D. *Discharge in Violation of Public Policy*

In Count IV, Gallant alleges that he was discharged for his refusal to violate antitrust laws in violation of public policy. Pennsylvania recognizes a common law cause of action for wrongful discharge, even of an employee-at-will, if the reason for the discharge offends a clear mandate of public policy. *Brown v. Hammond*, 810 F.Supp. 644, 646 (E.D.Pa.1993). Thus, an employee may have a cause of action where he is discharged for refusing to violate the law. *See Clark v. Modern Group*, 9 F.3d 321, 331–32 (3d Cir.1993); *Woodson v. AMF Leisureland Centers, Inc.*, 842 F.2d 699 (3d Cir. 1988). Pennsylvania's public policy exception to the at-will doctrine does not extend to cases in which an employee "reasonably believes" that his employer has requested him to perform an unlawful act and is discharged for objecting to the proposal he believes is unlawful. *Clark*, 9 F.3d at 330. Therefore, Gallant must demonstrate that the defen-

---

7. Pennsylvania courts have held that psychological or emotional harm is a compensable "injury" within the meaning of the Workers' Compensation Act. *Stylianoudis v. Westinghouse Credit* *Corp.*, 785 F.Supp. 530, 532 (W.D.Pa.1992), citing *William McDonough v. Workmen's Compensation Appeal Bd.*, 80 Pa.Commw. 1, 470 A.2d 1099 (1984).

dant's activities were indeed illegal under federal antitrust law. *Id.* at 332.

 The Patman Act prohibits any discrimination where the effect may be to lessen competition, create a monopoly, or prevent competition with any person. Plaintiff alleges that defendant violated the antitrust laws by requesting information about competitors' prices from potential customers and prospective employees and by agreeing with its competitors not to compete for certain business. Gallant further claims that defendant restricted bids on certain business held by its competitors, controlled all the pricing given by the plaintiff, and ordered the sales representatives to delay bids past the allowable contract period so that the customer would not be able to accept the plaintiff's prices. In addition, Gallant claims that the defendant ordered "retaliatory strikes" to be executed against competitors who were not exercising "market integrity"—i.e., fixing prices. These "retaliatory strikes" were intentional low bids on business held by certain competitors who were not behaving in conformance with the scheme. Furthermore, plaintiff claims that defendant ordered the plaintiff and others to obtain contracts, prices, and length of contracts from customers in order to control the market and the pricing of products.

The facts, viewed in the light most favorable to the plaintiff, are sufficient to allege a violation of the Robinson Patman Act. In other words, it would not be unreasonable for a juror to conclude that the activities of the defendant were done to control the price, the market, and the competition within the industry. Of course, these facts will be contested at trial. But a reasonable juror could find that the defendant was engaged in illegal antitrust activities and that as a result of plaintiff's complaint about these activities, he was discharged in violation of public policy.

### V. *CONCLUSION*

For the foregoing reasons this court hereby ALLOWS defendant's motion for summary judgment on Counts I, II, and III and DENIES the motion as to Count IV.

A separate order will issue.