2016 PA Super 266

| 412 NORTH FRONT STREET ASSOCIATES, LP; AND MARK J. BROWNSTEIN AND TODD A. NEWMAN AND BEEZER FAMILY REAL ESTATE, LLC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| SPECTOR GADON & ROSEN, P.C.; DAVID M. GILES, ESQUIRE; OLIVER D. GRIFFIN, ESQUIRE AND RICHARD D. GALLUCCI, JR., ESQUIRE | |
| Appellee | No. 777 EDA 2016 |

Appeal from the Order Entered February 4, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): Control No. 15070357
March Term, 2014, No. 4495

BEFORE:  FORD ELLIOTT, P.J.E., RANSOM, J., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.:                    **FILED NOVEMBER 29, 2016**

412 North Front Street Associates, LP, Mark J. Brownstein, Todd A. Newman, and Beezer Family Real Estate, LLC ("Appellants") appeal from the order entered by the Court of Common Pleas of Philadelphia County granting in part a motion for summary judgment filed by Spector Gadon & Rosen, P.C., David M. Giles, Esquire, Oliver D. Griffin, Esquire, and Richard D. Gallucci, Jr., Esquire ("Appellees") and dismissing claims asserting billing errors and overbilling in Appellant's breach of contract and professional negligence action against Appellees.  In the same order, the court also

*Former Justice specially assigned to the Superior Court.

denied Appellees' motion in its capacity as counterclaimant seeking unpaid legal bills for legal services allegedly rendered to Appellant Beezer.

Previously, on October 23, 2014, the court sustained Appellees' preliminary objections and dismissed with prejudice Appellants' negligence and contract based legal malpractice claims. With both orders putting Appellants out of court, they file this direct appeal claiming that their second amended complaint stated sufficient facts to survive preliminary objections and that genuine issues of material fact regarding Appellees' alleged breach of professional duty required the denial of Appellees' motion for summary judgment.[1] Appellees, for their part as counterclaimant, argue that the court improperly denied their counterclaim for payment on an account stated. We affirm.

## I. **ORDER SUSTAINING PRELIMINARY OBJECTIONS**

With respect to Appellants' challenge to the order sustaining preliminary objections and dismissing their breach of contract and professional negligence claims, we glean the pertinent facts underlying the

_____

[1] Appellants have filed a reply brief in which they included a supplemental reproduced record without prior permission of this Court. The inclusion of such a reproduced record, thus, runs counter to Pa.R.A.P. 2156, which provides only for an appellee to file a supplemental reproduced record. More problematic, still, is that the supplemental reproduced record contains information absent from the certified record. Accordingly, we accept the filing of Appellants' reply brief but strike the supplemental reproduced record contained therein.

case *sub judice* from Appellants' Second Amended Complaint,[2] filed

September 5, 2014, which stated as follows:

> 9.   Plaintiffs Brownstein, Newman and Beezer Family Real Estate, LLC formed 412 North Front Street Associates, LP, a limited partnership established to purchase, manage, and develop real estate.
>
> 10.   As part of that intended purpose, on or about October 21, 2005, 412 North Front Street Associates, LP (hereinafter "412 North Front Street") entered into a loan agreement with Abington Bank.
>
> 11.   Pursuant to the loan documents, 412 North Front Street promised to pay Abington Bank (the "Bank") the principal sum of Five Million Nine Hundred Thousand Dollars ($5,900,000.00). the initial term of the loan expired on March 21, 2007.
> 12.   The loan agreement was subsequently amended three times with the principal sum changing to Seven Million One Hundred Twenty-Five Thousand Dollars ($7,125,000.00).   The term of the Note was extended to March 31, 2009.
>
> 13.   On or about October 21, 2005, Brownstein, Newman, Zitomer and Beezer Family Real Estate executed Surety Agreements in favor of the Bank.

---

[2] On April 8, 2014, Appellants filed the original complaint against Appellees asserting breach of contract and professional negligence claims.  Appellees filed a separate action on April 22, 2014 seeking allegedly unpaid legal fees.  On May 21, 2014, Appellants served certificates of merit regarding all Appellees named in the original complaint.  Appellees filed preliminary objections to the original complaint, but, based on alleged new information pertaining to firm time records attached to Appellees' action, Appellants filed an amended complaint asserting improper billing practices and named Gallucci as an additional defendant.  Appellants again filed preliminary objections, which the court sustained in part but with leave to allow further amendment of the complaint.  Appellants filed their Second Amended Complaint, at issue herein, on September 5, 2014.

14. Under the Sureties, Brownstein, Newman, Zitomer, and Beezer Family Real Estate agreed to guaranty and become sureties to the Bank for all obligations of 412 North Front Street under the Loan.

15. During the course of the refinancing of the loan agreement with the Bank, in the early spring 2009, Plaintiffs retained the services of the Firm and Attorneys Giles, Griffin and Gallucci (hereinafter "Attorney Defendants" to help in the refinancing and to assist in the potential discussions involving restructuring or modification of the loan. It was agreed that the Firm and [Appellees] would be representing all Plaintiffs in all matters stemming from loan documents including any future litigation.

16. The Firm and the Attorney Defendants and the Plaintiffs entered into a legal services contract.

17. The legal services contract was in the form of a letter of representation. Defendant Giles drafted and forwarded a letter of representation to all Plaintiffs and specifically referenced that Defendants would be representing the interests of 412 North Front Street as well as the interests of Newman, Brownstein, Zitomer and Beezer Family Real Estate, LLC in the attempted refinancing as well as any litigation stemming from, or as a result of, a failure to restructure or modify the loan.

18. The letter of representation made it abundantly clear that the strategies employed by the Firm would be consistent and the same for all Plaintiffs and that all actions taken or pursued on behalf of one of the Plaintiffs would be taken or pursued on behalf of all Plaintiffs. Defendants are in possession of the executed letter of agreement.

19. Plaintiffs retained the Firm and the Attorney Defendants because of their supposed knowledge of the banking industry and real estate market. The Firm and the Attorney Defendants hold themselves out to be experts in banking and banking litigation.

20. While Newman and Brownstein are attorneys, their respective areas of practice and expertise are separate and distinct from that of the Firm, Giles, and Griffin, which is why Plaintiffs sought out the Attorney Defendants['] representation and assistance.

21.     The Firm and the Attorney Defendants, despite their initial representations, were not helpful in renegotiating or modifying payments to the Bank pursuant to the loan and therefore, the Bank confessed judgment against all Plaintiffs in the Court of Common Pleas in the amount of Eight Million Two Hundred Fifty thousand Four Hundred Fifty-Eight dollars and Seventy Five cents ($8,250, 458.75).

22.     Plaintiffs forwarded the confessions of judgment to David Giles, Esquire, who informed Plaintiffs that the confessions themselves were flawed and that Petitions to Open said Judgments would be filed as to Newman, Brownstein, Beezer Family Real Estate *and 412 North Front Street*.

23.     Attorney Giles represented to Plaintiffs that the warrants to all the confessions of judgment, including the confession of judgment against 412 North Front Street, were defective and that the Attorney Defendants would move to open or strike all the confessions of judgment.

24.     The Attorney Defendants specifically communicated to Plaintiffs during multiple meetings and telephone conferences that all Plaintiffs, including 412 North Front Street as the Debtor, had valid, good faith defenses, including defective warrants, to the Confessions of Judgment.

25.     A review of the billing entries of the Firm confirms that efforts were initially undertaken and billing entries were submitted reflecting that the confessions of judgment entered against all Plaintiffs were going to be attempted to be open. (See Exhibit "A").

26.     The description of legal services for June 29, 2009 specifically states:

> "Discussions with DMGiles; retrieval of dockets regarding confessions of judgment entered against Borrower and Guarantors; begin drafting of other petitions to open/strike *for all defendants*."

27.     There are no time entries indicating a conversation with any of the Plaintiffs wherein one or more of them were advised

that no efforts would be undertaken to open or strike the judgment against 412 North Front Street.

28. The Firm and the Attorney Defendants successfully moved to open the judgments against Brownstein, Newman, and Beezer Family Real Estate, but unbeknownst to Plaintiffs, never attempted to open the judgment against 412 North Front Street, even though the Attorney Defendants had specifically represented that the warrants for all of the confessions of judgment, including the 412 North Front Street judgment, were defective, and that the Attorney Defendants were going to attempt to open or strike all the judgments against all of the Plaintiffs pursuant to the letter of representation.

29. Plaintiffs made it clear to the Firm and the Attorney Defendants that all judgments needed to be opened, or at least good faith attempts needed to be made to open the judgments, against all Plaintiffs based upon the representations of the Attorney Defendants that there were valid defenses to the confessions of judgment entered against all Plaintiffs.

30. By failing to open the judgment against 412 North Front Street, or even attempting to open same, Plaintiffs, as guarantors, were left completely exposed and with no real recourse.

31. Additionally, by failing to open the judgment against 412 North Front Street, or even attempting to open same, the Firm and Attorney Defendants had violated the terms of the letter of representation.

32. The Firm and the Attorney Defendants misrepresented their strategy with respect to the judgment entered against 412 North Front Street in that the Attorney Defendants stated their intention to file Petitions to Open/Strike Judgments as to "all defendants" but failed to do so.

33. The Firm and the Attorney Defendants never informed Plaintiffs that they had no intention of moving to open the judgment and every intention of allowing the judgment against 412 North Front Street to stand.

34. It was only after Plaintiffs' retained new counsel in 2012 that the Attorney Defendants communicated that they did not

attempt to open the judgment against 412 North Front Street because they did not believe there to be a valid ground for doing so. This new position of the Attorney Defendants was in complete contradiction to the Attorney Defendants' previously communicated position to Plaintiffs that the warrants for all of the confessions of judgment were defective.

35. By failing to adhere to the terms of the letter of representation and the instructions of Plaintiffs in handling the judgments, the Firm and the Attorney Defendants acted in bad faith and in violation of the legal services contract between the parties.

36. Plaintiffs relied upon the Attorney Defendants' representations that they would protect the interests of all Plaintiffs and accepted that the protracted litigation relating to the loan was being addressed in their best interests.

37. However, unbeknownst to Plaintiffs, the protracted and costly litigation was due directly to the actions and inactions of the Firm and the Attorney Defendants.

38. Plaintiffs were billed in excess of $300,000 for legal services, the majority of which could have been avoided had Defendants attempted to open the judgment against 412 North Front Street.

39. Because the Firm and the Attorney Defendants provided no assistance with respect to handling a potential refinancing or modification of the loan, and made no attempt to open the confession of judgment against 412 North Front Street, the real property collateralizing the loan, 107 Callowhill Street, Philadelphia, Pennsylvania, 412 North Front Street, Philadelphia, Pennsylvania, and 416 North Front Street, Philadelphia, Pennsylvania, was subject to a Sheriff's Sale.

40. On or about September 24, 2009, the Bank assigned the Judgment, Mortgage and all loan documents to North Front Street Realty, LLC (hereinafter "North Front Street Realty").

41. On or about October 6, 2009, North Front Street Realty, by Writ of Execution, caused the Sheriff's Sale of the Mortgaged Property.

42. The Bank was the successful bidder of the property at Sheriff's Sale.

43. The Firm and the Attorney Defendants allowed the Sheriff's Sale to proceed and erroneously permitted a portion of unencumbered property to be sold along with the mortgaged property.

44. Plaintiffs instructed Giles to object to and fight the Sheriff's Sale. Giles advised Plaintiffs that they had no legal basis to object to the Sheriff's Sale and that it was meaningless to [make] any efforts in reaching an amicable resolution of the matter. Because no objection was raised to the Sheriff's Sale by the Firm, a date was set for a Fair Market Value Hearing. It never occurred to Plaintiffs, as they had placed their reliance upon the Attorney Defendants to adhere to the legal services contract, that no effort had been taken to open the judgment against 412 North Front Street. Attorney Giles never informed Plaintiffs that there was no legal basis to object to the Sheriff's Sale because the Attorney Defendants had never attempted to open the judgment.

45. Had Defendants filed a Petition to Open the Judgment against 412 North Front Street, none of these events would have occurred.

46. Further, Giles allowed an unencumbered property known as 440 N. Front Street owned by 412 N. Front Street to be sold at the Sheriff's Sale causing additional damages to Plaintiffs.

47. On or about April 1, 2010, the Bank, through North Front Street Realty, filed a Petition to Fix Fair Market Value and Establish a Deficiency Judgment against 412 North Front Street, Brownstein, Newman, and Beezer Family Real Estate as Respondents.

48. After extensive and costly written submissions, the Court conducted approximately two days of hearings on the Petition to Fix Fair Market Value.

49. The Court fixed the fair market value of the property at Six Million One Hundred Twenty-Five Thousand Dollars ($6,125,000.00) and declared that the deficiency amount was

One Million Three Hundred Four Thousand Eight Hundred Eleven dollars and Ninety Six cents ($1,304,811.96).

50. The Bank, through North Front Street Realty, filed a Complaint in the Court of Common Pleas of Philadelphia County against Brownstein, Newman, and Beezer Family Real Estate seeking the deficiency judgment.

51. The Firm filed a Motion for Reconsideration as well as an appeal of the fair market value order.

52. While the costly appeal was pending, Plaintiffs voiced their unhappiness with their representation by the Firm and the Attorney Defendants.

53. Plaintiffs determined that new counsel was necessary and in or around May 2012, Plaintiffs[ ] retained the services of Michael Wolf, Esquire.

54. In May 2012, upon retaining the services of Attorney Wolf, Plaintiffs learned for the first time of the Firm['s] and Attorney Defendants' mishandling of the judgment entered against 412 North Front Street. Specifically, Attorney Wolf advised after reviewing the file and the pleadings in the matter that no effort had been undertaken to protect 412 North Front Street from the confession of judgment.

55. In May 2012, Plaintiffs discovered for the first time that the actions or inactions of the Firm and the Attorney Defendants in failing to contest the judgment by confession entered against 412 North Front Street and the subsequent Sheriff's Sale involving unencumbered property in complete disregard for Plaintiff's specific requests and in direct contradiction of the legal services agreement rose to the level of professional negligence and breach of contract.

56. Ultimately, the deficiency action was settled for the sum of Eighty-Seven Thousand Five Hundred dollars ($87,500.00).

57. The settlement was effectuated by new counsel for Plaintiffs to whom Plaintiffs paid additional legal fees.

58. The Firm['s] and the Attorney Defendants' mishandling of the loan dispute resulting in thousands of dollars in unnecessary

legal fees being assessed to Plaintiffs, as well as their significant over-billing of the events surrounding the loan dispute, have caused significant damage to Plaintiffs in an amount in excess of $300,000.

59. Additionally, by allowing an unencumbered property known as 440 N. Front Street owned by 412 N. Front Street to be sold at the Sheriff's Sale, Plaintiffs have suffered damages totaling in excess of $200,000.

Second Amended Complaint, filed 9/5/14, at 1-11 (emphasis in original).

Appellants alleged further in their Second Amended Complaint (hereinafter "complaint") that, pursuant to the terms of the parties' contract, Appellees were required to perform their services competently, in good faith, in a manner consistent with the standards of the legal profession, and in accordance with the reasonable instructions and requests of Appellees. Nevertheless, Appellees breached the terms of the contract through instances of over-billing and billing for services that do not fall under the terms of the legal services contract, Appellants alleged.

In particular, the complaint continued, Appellees failed to perform services discussed by the parties, namely, to modify or restructure the loan documents and, eventually, to open or attempt to open the confession of judgment against the debtor, 412 North Front Street. But for Appellees' actions and omissions in this regard, Appellants would not have been exposed to the legal liabilities that befell them, it is alleged. Additionally, the complaint claimed that Appellees' excessive billing was tied directly to activities necessitated by the Sheriff's Sale and the fair market value

litigation that should never have occurred. The sale of an unencumbered property along with the encumbered property at Sheriff's Sale was an additional unjustifiable loss caused by Appellees' breach of duty, the complaint contended.

Appellees filed preliminary objections to the complaint in which they argued, *inter alia*, that Appellants failed to allege all necessary elements to their negligence and contract-based claims of legal malpractice. Specifically, Appellees maintained, Appellants failed to allege either a good-faith basis upon which Appellees could have filed a petition to open judgment against the debtor or any facts from which a reasonable inference could be drawn that such a petition would have succeeded. An assertion of negligence was, therefore, not supported by well-pleaded facts, they argued. Moreover, Appellants failed to identify what injury Appellees caused when no facts were alleged from which it could plausibly be inferred that the filing of a petition to open or strike could have asserted a meritorious defense and led to a more favorable result for debtor 412 North Front Street and the other Appellants.

Breach of contract was not sufficiently alleged, either, according to Appellees' preliminary objections, where the complaint pleaded only that Appellees informed Appellants they would make a good faith attempt to open the judgments against all Appellants. The complaint, however, failed to identify a good faith basis or defense available to support the filing of a

petition, Appellees objected, negating the allegation of breach. Additionally, to Appellants' allegation that Appellees agreed to abide by Appellants' reasonable directions and requests, Appellees objected that Appellants' failure to identify a valid defense to the confession of judgment against 412 North Front Street precluded them from alleging that any direction to file a petition to open or strike would have been reasonable.

As noted above, on October 23, 2014, the lower court[3] entered an order sustaining Appellees' preliminary objections and dismissing with prejudice Appellants' breach of contract and professional negligence claims. As for Appellants' claims relating to improper or inaccurate billing of attorneys' fees, the court sustained preliminary objections but with leave to amend. On November 12, 2014, the court denied Appellants' motion for reconsideration.

Appellant raises the following issues pertinent to the court's order sustaining preliminary objections:

1. Whether the Trial Court erred in sustaining in part Defendants'/Appellee's [sic] Preliminary Objections to Plaintiffs' Second Amended Complaint and dismissing with prejudice Plaintiffs'/Appellants' claims for legal malpractice and malpractice-based breach of contract.

2. Whether the Trial Court erred in denying Plaintiffs'/Appellants' Motion for Reconsideration.

Appellants' brief at 8.

---

[3] The Honorable Pamela Pryor Dembe presiding.

In their first issue, Appellants contend the court erroneously sustained Appellees' demurrers when the complaint comprised sufficient factual allegations, which must be read as a whole and accepted as true, to support liability under the respective theories of breach of contract and legal malpractice. Breach of contract was set forth through allegations that Appellees prepared and delivered to Appellants a letter of representation indicating that the interests of all Appellants, including debtor 412 North Front Street, would be advanced in the attempted refinancing as well as in any litigation stemming from a failure to reform or modify the loan.

According to the complaint, moreover, Appellees declared to Appellants that the confessions of judgment against all were defective and that Appellee attorneys would move to open or strike each one, Appellants argue. Appellants point to the complaint's averment that Appellees, on multiple occasions, represented that every Appellant had valid, good faith defenses, including but not limited to defective warrants, against the confessions of judgment. Despite these representations, Appellees never attempted to open or strike judgment against 412 North Front Street as they did for its guarantors, in violation of the contract, the complaint stated.

As to the claim of legal malpractice, Appellants direct us to where the complaint alleged that Appellees submitted billing entries reflecting measures taken to open the confessions of judgment entered against all Appellees. The description of legal services rendered for June 29, 2009, the

- 13 -

complaint alleged, identified the retrieval of dockets regarding confessions of judgments entered against "Borrower and Guarantors" and the preparation of petitions to open/strike for all defendants. The complaint also sufficiently alleged malpractice by asserting that Appellees allowed an unencumbered property owned by 412 North Front Street Associates to be sold at sheriff's sale, causing a $200,000 loss, Appellants maintain.

Appellees respond that, while the complaint alleged they represented to Appellants that "all judgments needed to be opened, or at least good faith attempts needed to be made to open the judgments, against all plaintiffs," Appellants failed, to the detriment of their contract-based claim, to allege that any defense or "good faith" basis actually existed to support an attempt to open. The complaint likewise failed to state a claim for legal malpractice/professional negligence, Appellees argue, where it failed to allege that a valid defense to the judgment confessed against the debtor, 412 North Front Street, actually existed.

Without pleading facts allowing for the reasonable inference that a valid defense existed, Appellees maintain, Appellants were unable as a matter of law to prove the necessary element of Appellees' negligence, *i.e.*, the breach of their professional duty to exercise ordinary skill and knowledge by presenting such a valid defense. Simply calling Appellees "negligent," without offering facts, which, accepted as true, would establish or allow the

inference of negligence, was nothing more than a conclusory assertion incapable of surmounting a preliminary objection, Appellees insist.

So, too, does it follow that the complaint failed to allege facts from which one could reasonably infer an injury caused by Appellees, they maintain, as it contained no allegation as to how losses tied to 412 North Front Street's confessed judgment would have been avoided simply by filing a petition to open or strike on its behalf. Indeed, Appellees contend, the complaint essentially conceded that the debtor owed a substantial debt it could no longer pay and one that Abington Bank opted against restructuring despite Appellees' good-faith negotiating efforts.

We review appeals from orders sustaining preliminary objections in the nature of a demurrer under the following standard:

> A preliminary objection in the nature of a demurrer is properly granted where the contested pleading is legally insufficient. Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer. All material facts set forth in the pleading and all inferences reasonably deducible therefrom must be admitted as true.
>
> In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion. When sustaining the trial court's ruling will result in the denial of

claim or a dismissal of suit, preliminary objections will be sustained only where the case is free and clear of doubt.

Thus, the question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

*Weiley v. Albert Einstein Medical Center*, 51 A.3d 202, 208-209 (Pa. Super. 2012) (internal citations and quotation marks omitted).

Where the complaint fails to set forth a valid cause of action, a preliminary objection in the nature of a demurrer is properly sustained. *Lerner v. Lerner*, 954 A.2d 1229, 1234-35 (Pa.Super. 2008). The complaint need not identify specific legal theories, but it must provide essential facts to support the claim. *See Krajsa v. Keypunch, Inc.*, 622 A.2d 355, 357 (Pa.Super. 1993). "Assertions of legal rights and obligations in a complaint may be construed as conclusions of law, which have no place in a pleading." *DelConte v. Stefonick*, 408 a.2d 1151, 1153 (Pa.Super. 1979) (citation omitted).

"It is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016) (citing *J.F. Walker Co., Inc. v. Excalibur Oil Grp., Inc.*, 792 A.2d 1269, 1272 (Pa.Super. 2002)). "Resultant damages" are those damages suffered from

the breach. *McShea v. City of Philadelphia*, 995 A.2d 334, 340 (Pa. 2010). *See also Logan v. Mirror Printing Co. of Altoona, Pa.*, 600 A.2d 225, 226 (Pa.Super. 1991) (recognizing "[i]n order to recover damages pursuant to a breach of contract, the plaintiff must show a causal connection between the breach and the loss."). A claim of legal malpractice requires that the plaintiff plead the following three elements: employment of the attorney or other basis for a duty; the failure of the attorney to exercise ordinary skill and knowledge; and that the attorney's negligence was the proximate cause of damage to the plaintiff. *Kituskie v. Corbman,* 714 A.2d 1027, 1029 (Pa. 1998); *accord Steiner v. Markel,* 968 A.2d 1253, 1255 (Pa. 2009).

After reviewing the record, the parties' respective arguments, and governing authority, we conclude Appellants failed to allege in their complaint sufficient facts allowing the plausible inference that a viable basis for recovery existed for either its breach of contract or legal malpractice claim. Most problematic for Appellants was that no allegation provided a causal connection between either the alleged breach of contract or professional duty, respectively, and Appellants' proclaimed losses. Specifically, the complaint alleged that Abington Bank confessed judgment against all Appellants after it declined Appellants' request, presented through the advocacy of Appellee Firm and attorneys, to restructure or modify the terms of the loan agreement between the lender bank and debtor 412 North

Front Street. Appellants failed to allege how, but for Appellees' conduct, they would have avoided what, by every indication in the pleading, was Abington Bank's inevitable collection of a defaulted loan through sheriff's sale of property owned by 412 North Front Street. Allegations of fact essential to establishing that Appellees' conduct caused Appellants' losses were, therefore, absent from the complaint.

Relatedly, the complaint refers to Appellees' failure to act upon its pledge to make good-faith attempts to open judgments against all defendants as constituting a breach of contract, but Appellants failed to assert therein what practicable, good-faith attempts could have plausibly resulted in a superior outcome to the one obtained. Without identifying these essential facts, the complaint offers, at best, a baseless, conclusory statement that Appellees failed to make at least a "good-faith attempt" to file a petition.

In Appellants' complaint, therefore, we discern insufficient assertion of essential facts necessary to support legally viable claims of breach of contract and legal malpractice. Accordingly, we find no abuse of discretion in the dismissal of both claims by way of the court order sustaining preliminary objections.[4]

---

[4] The same reasons for rejecting Appellants' first claim apply to defeat their second claim, which pertains to the court's denial of their motion for
*(Footnote Continued Next Page)*

## II.   ORDER GRANTING DEFENSE MOTION FOR SUMMARY
## JUDGMENT

The second aspect of the present appeal involves the lower court's[5] order granting Appellees' motion for summary judgment on Appellants' remaining claims asserting billing errors and practices but denying their motion seeking judgment on its counterclaims asserting breach of contract and unpaid legal fees.   In setting forth the pertinent factual and procedural history of this phase of the case, the lower court aptly provides the following in its opinion dated February 1, 2016:

> Defendants/Counterclaim Plaintiffs [Appellees] filed the instant motion for summary judgment seeking judgment on plaintiffs' [Appellants'] sole remaining claim for breach of contract and legal services.   [A summary of the underlying bank loan, retention of Appellees to negotiate and restructure the loan, failure to come to agreement with bank, confessions of judgment, decision not to include 412 North Front Street Associates among petitions to open, and sheriff's sale is provided].
>
> ***
>
> Pursuant to the retainer agreement between plaintiffs and defendants, plaintiffs were charged an hourly fee for the legal services SGR performed plus the cost of all out of pocket expenses.   SGR submitted monthly invoices to plaintiffs for payment.   The invoices included the hourly rate, the amount due, a description of the work performed by SGR, the identities

_(Footnote Continued)_ ——————————

reconsideration, as the arguments offered in support thereof essentially reiterate the arguments appearing in the unsuccessful first claim.

[5] Presiding over the motion for summary judgment was the Honorable Ramy I. Djerassi, who assumed the calendar of the Honorable Pamela Pryor Dembe upon her July 2015 retirement.

of the attorneys and staff who performed the billable work, the amount of time to complete the work and the monetary fee for the legal work and expenses.

On April 29, 2011, David Giles, Esquire of SGR emailed the following to plaintiffs Newman and Brownstein:

"As we advised you, as of March 1, 2011, you owe our firm approximately $91,000.00 in legal fees regarding our defending you from the actions brought by Abington Bank to collect on a Loan in the amount of $6,390,000.00 made by Abington Bank to 412 North Front Street LP which was guaranteed by the both of you as well as Beatrice Zitomer and Beezer Family Real Estate, LLC ("Beezer"). I am confirming our agreement wherein you have agreed to the following:

1. Payment of $20,000.00 by the close of business today.

2. Commencing on June 1, 2011 and on the first day of each month thereafter, you will pay $10,000.00 per month until all legal fees incurred in this matter have been paid in full.

3. As we previously agreed, you are entitled to a courtesy discount of 10% of the legal fees incurred and as soon as the amount due in legal fees has been reduced to the amount of the discount that you are entitled to then such fees shall applied [sic] to the satisfaction of the discount.

4. We will be drafting a petition for Reconsideration of the Court order which improperly violated the Deficiency Judgment Act by entering a judgment against the both of you without even an action being filed against you by Abington Bank under your Guaranty Agreements. We will not be representing Beatrice Zitomer or Beezer in the Petition for Reconsideration.

5. We will be filing an appeal on the amount of the deficiency determined by the Court.  We will not be filing an appeal of this Order on behalf of Beatrice Zitomer or Beezer.

6. We will also be representing the both of you regarding any actions filed by Abington Bank against you (under the Guaranty Agreements executed by you) to collect the "deficiency."  We will not be representing Beatrice Zitomer or Beezer with respect to any actions filed against them by Abington Bank.

7. You are confirming that you owe the legal fees set forth above and that it is your intention to pay all such fees pursuant to the terms of this email.

Please confirm your agreement to the terms set forth above.

Best Regards

David Giles[fn]

---

Fn.    Exhibit "3" to Defendants/Counterclaim Plaintiffs' Motion for Summary Judgment.

---

On May 2, 2011, Giles acknowledged receipt of $20,000 from plaintiffs and requested confirmation of the parties' Agreement: "Please let me know if you agree to these terms.  I received the payment, I just want to make sure that we are all in agreement with the email I sent on Friday which is set forth below."  On May 3, 2011, Brownstein responded:  "Agreed, however, we reserve the right to review all submissions for payment.  I want you to take Stern on and get this turned around."

In addition to the $20,000 immediate payment, plaintiffs made several monthly payments including a $10,000 payment in July 2011, a $4,000 payment in August 2011, a $20,000 payment in December 2011, and a $10,000 payment on January 2012.  No further payments were made.  Presently, SGR alleges that it is

owed $78,511.94 for legal services rendered and out of pocket expenses incurred, exclusive of interest, as set forth in the most recent unpaid invoice dated May 3, 2013.[fn]

---

Exhibit "4" to Defendants/Counterclaim Plaintiffs' Motion for Summary Judgment.

---

On April 8, 2014, plaintiffs filed their original complaint against SGR, Giles and Griffin. On May 21, 2014, certificates of merit were filed. [A summary of proceedings leading to the Honorable Judge Pamela Pryor Dembe's order sustaining preliminary objections and dismissing Appellants' negligence and contract based claims is provided].

Presently before the court is SGR's motion for summary judgment seeking to dismiss plaintiff's sole remaining claim for breach of contract alleging "billing errors" and "overbilling." SGR also seeks judgment on its counterclaims at Count 1 (breach of contract) and County 2 (unpaid legal fees).

Trial Court Opinion, filed 2/1/16, at 1, 2-6.

With respect to Appellants' remaining breach of contract claim asserting overbilling and billing errors, the court granted Appellees' summary judgment motion because, in its opinion, Appellants failed to present evidence sufficient to make out a *prima facie* cause of action. Specifically, the court opined, the presentation of Appellees' "invoices with boxes drawn around certain entries and another document with notations of 'overbilling' or 'error in billing' noted beside each entry[]'" failed to explain what the proper amounts for such services really were or why such entries constituted errors or overbilling. **Id.**, at 7.

Moreover, the court discounted the deposition testimony of Todd Newman, Esquire, that Attorneys Giles and Doherty took too long in

responding to the Bank's letter and preparing for oral argument on the deficiency hearing, respectively, and that Giles' delegation of other matters to less experienced attorneys was improper. *Id.*, at 7 n. 9. Newman, the court noted, "is not a specialist in banking or lender litigation, confessions of judgment or deficiency proceedings. He also testified at deposition that he does not get paid by the hour for his legal work and has no experience keeping time records.[]" *Id.* at 7-8. The court, therefore, cited to authority calling for summary judgment where a party fails to produce expert testimony in a situation requiring one, and no other evidence exists to support the cause of action. *Id.* at 8 (citing *Masgai v. Franklin*, 787 A.2d 982, 985 (Pa.Super. 2001).

Consistent with its judgment against Appellants' breach of contract claim alleging overbilling, the court also entered judgment in favor of Appellees' counterclaim for breach of contract pertaining to outstanding fees and costs and awarded them $78,511.94 along with prejudgment interest at the statutory rate of 6% per annum, totaling $13,148.03. The court, however, denied Appellees' additional counterclaim for $27,000 for legal services allegedly performed for Appellant Beezer Family Real Estate because the billing invoices attached as exhibits did not distinguish such services from the work being performed for Appellants as a group. Without such evidence differentiating Beezer in this way, Appellees failed to substantiate its claim, the court ruled.

Appellants now contend there existed genuine issues of material fact regarding the scope of work Appellees' promised to perform, whether or not it was actually performed, whether or not overbilling took place, and whether Newman's deposition offered sufficient insight into and criticism of such billing so as to have required denial of Appellees' summary judgment motion. We disagree.

We begin by noting our scope and standard or review of the grant of summary judgment:

> Our review of the trial court's grant of summary judgment is plenary. Summary judgment is proper where the pleadings, depositions, answers to interrogatories, admissions and affidavits and other materials show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. We must view the record in the light most favorable to the opposing party and resolve all doubts as to the existence of a genuine issue of material fact in favor of the nonmoving party. We will reverse the trial court's grant of summary judgment only upon an abuse of discretion or error of law.

***Cresswell v. End***, 831 A.2d 673, 675 (Pa.Super. 2003) (citation omitted).

Appellants argue that the allegations of Appellees' overbilling and improper billing practices are so straightforward as to be within the understanding of a jury, thus obviating the need for expert explanation. For example, Appellants point to Appellants' bill for over $28,000 for the research and drafting of four identical petitions to open/strike as an example of a matter coming within the common experience and comprehension of nonprofessional persons. Also within a layperson's understanding,

- 24 -

Appellants' contend, is the breach of duty manifest in Appellees' allowing unencumbered property owned by 412 North Front Street to be sold at sheriff's sale, causing additional damages of $200,000. An $80,000 bill for work associated with the fair market value hearing is also cited as patently excessive.

In **Powell v. Risser**, 99 A.2d 454 (Pa. 1953), our Supreme Court stated: "[E]xpert testimony is necessary to establish negligent practice in any profession." **Id.** at 456. This Court expounded on the precept in **Storm v. Golden**, 538 A.2d 61 (Pa.Super. 1988), wherein we stated that although the general statement in **Powell** "is not a concrete pronouncement as to any one profession, it exhibits a recognition that when dealing with the higher standards attributed to a professional in any field[,] a layperson's views cannot take priority without guidance as to the acceptable practice in which the professional must operate." **Id**. at 64.

In **Storm**, the plaintiff alleged that her former attorney breached duties owed to her in performance of a real estate transaction. Defendant attorney moved for nonsuit given plaintiff's failure to present expert testimony. On appeal, we rejected plaintiff's contention that the purported simplicity of the real estate transaction eliminated the need for expert testimony. Specifically, we stated:

> Generally, the determination of whether expert evidence is required or not will turn on whether the issue of negligence in the particular case is one which is sufficiently clear so as to be determinable by laypersons or concluded as a matter of law, or

- 25 -

whether the alleged breach of duty involves too complex a legal issue so as to warrant explication by expert evidence....   Here, the underlying question of whether legal malpractice occurred revolves around a lawyer's duty and responsibility in connection with representing a client in a real estate transaction.  We do not agree with appellant's assertions that the sale of real estate is an elementary and non-technical transaction [that] requires only simple common sense....   At issue is not the simplicity of the transaction but the duty and degree of care of the attorney. Whether an attorney failed to exercise a reasonable degree of care and skill related to common professional practice in handling a real estate transaction is a question of fact outside the normal range of the ordinary experience of laypersons.

*Id.* at 64–65.   We indicated, further, that "[e]xpert testimony becomes necessary when the subject matter of the inquiry is one involving special skills and training not common to the ordinary layperson."   *Id.* at 64. Therefore, our decisional law has held that the standard of care applicable to a given profession must be determined from the testimony of experts, unless the conduct involved is within the common knowledge of the ordinary layperson.

Contrary to Appellants' position, we discern nothing about the subject matter at issue that resides within the ordinary layperson's common knowledge.  Billing practices in the litigation of petitions to open or strike orders relating to the high-stakes banking and real estate matters at hand would transcend the experience of lay jurors and, therefore, require the testimony of an expert to clarify the issues.  Attorney Newman did not fill that role, moreover, as he, himself, conceded that the scope of his practice and skills has never included such work.

Nor was it obviously the product of a breached duty of care that unencumbered property belonging to debtor 412 North Front Street Associates was also subjected to sheriff's sale, as the sale proceeds were applied to satisfy the debtor's obligations owed to Abington Bank. Again, an expert would have been required to explain how Appellees' actions or inaction in this instance deviated from the "knowledge and skill required" of an attorney practicing in this field. Therefore, Appellants' failure to produce an expert or any other source of explication as to the standards of care required in the case *sub judice* justified the dismissal of their claim.

Consistent with its dismissal of Appellants' claim of overbilling, the lower court accepted Appellees' counterclaim that Appellants were, therefore, in breach of contract by not paying the outstanding $91,000.00 in legal fees in accordance with the parties' agreement. In their May 3, 2011, reply to David Giles' letter setting forth the balance of legal fees owed, Newman and Brownstein clearly and concisely said they "agreed" with Giles' accounting. **See** correspondence, *supra*. Appellants deny that their reply amounted to an agreement on legal fees owed because, they claim, it was made under duress and only in response to David Giles' "ultimatum" demanding payment. Consequently, Appellants argue, there was no "account stated" on which they were subject to pay.

This bare assertion, however, is in conflict with the record before the lower court, as the correspondence between the parties supports the court's conclusion that no issue of material fact existed regarding the formation of

an agreement as to the amount of legal fees accrued as of the April 29, 2011 date of Giles' letter. Neither Appellants' financial difficulties at the time nor their subsequent statement in reply to Giles that they reserved the right to review all submissions for payment qualified, in any way, their succinct and explicit assent to Giles' account of legal fees as of the date of their correspondence. Accordingly, we will not disturb the grant of summary judgment on this this claim for legal fees.[6]

      Order Affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/29/2016

---

[6] We also affirm the court's denial of summary judgment on Appellees' counterclaim for $27,000 payable by Appellant Beezer Family Real Estate, as Appellees' briefed argument fails to address, let alone establish error with, the lower court's determination that billing invoices did not separately describe work performed for Beezer as a separate group. As such, we perceive no reason to upset the court's conclusion that factual support for the position that such a sum was due and owing by Beezer was lacking.