J-A19036-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DON T. CARMODY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| POST AND SCHELL, P.C., SIDNEY R. | : | No. 3151 EDA 2022 |
| STEINBERG, MARC H. PERRY, | : | |
| ANDREW W. ALLISON, AND ERIKA | : | |
| M. PAGE | : | |

Appeal from the Order Entered November 10, 2022
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  201100106

BEFORE:  BOWES, J., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:          **FILED SEPTEMBER 13, 2023**

Don T. Carmody (Carmody) appeals *pro se*[1] from the November 10, 2022 order of the Court of Common Pleas of Philadelphia County (trial court) granting the motion for summary judgment on filed by Post & Schell, P.C., Sidney R. Steinberg, Marc H. Perry (Perry), Andrew W. Allison and Erika M. Page (collectively, Appellees).  We affirm.

**I.**

The trial court aptly summarized the facts of the instant case as follows:

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Carmody is an attorney licensed to practice in New York.

On November 23, 2015, [Carmody] was involved in a motor vehicle accident in Center City Philadelphia, when the taxicab in which he was riding was struck by hit and run motorist. As a result of this accident, [Carmody] suffered injuries and sought to sue the taxicab driver, Favzi Abdullah; the taxicab company (who he purported to be "215-Get-A-Cab"); and the unidentified driver of the hit and run vehicle as he believed the accident was caused by their combined negligence.

In December 2015, [Carmody] entered into a contingency fee agreement with Post & Schell. After becoming dissatisfied with the manner in which Post & Schell was handling his case, [Carmody] asked for his file to be sent to him. [Carmody] stated in his deposition that he failed to respond to any of Post & Schell's repeated efforts to contact him about his case after he received his file, claiming that he "had no obligation to do so." According to [Carmody's] deposition testimony, he and [Perry], a Post & Schell attorney handling his case, had a phone conversation on November 22, 2017 in which Mr. Perry stated that the statute of limitations for [Carmody's] tort claim was expiring on November 23, 2017, that Perry was under the impression that Post & Schell no longer represented [Carmody], but that he would speak with his general counsel regarding how to proceed. Later that same day, [Carmody] filed a *pro se* Complaint ("*pro se* action") against the wrong entity, 215-Get-A-Cab.

On November 27, 2017, Mr. Perry, in abundance of caution since it was unclear where Post & Schell's representation stood, filed a Complaint ("Post & Schell action") on [Carmody's] behalf against the correct entities: taxicab driver Favzi Abdullah, AF Taxi Inc., and the Philadelphia Taxi Association, Inc. Due to the Thanksgiving holiday, this complaint was timely filed before the expiration of the statute of limitations. In [Carmody's] deposition testimony, he stated that Post & Schell's filing of this complaint was "unauthorized" and maintained that Post & Schell "no longer represented me as of my filing of the *pro se* complaint."

On October 15, 2018, the Honorable Shelly Robins New granted Post & Schell leave to withdraw as counsel and gave [Carmody] sixty (60) days to retain new counsel. He failed to procure new counsel and failed to prosecute the Post & Schell action, explaining in his deposition that he "had no responsibility as far as that case was concerned, no obligations, no relationship to it. It had nothing to do with me." After failing to appear at his scheduled arbitration

hearing on January 24, 2019, the Honorable Lisette Shirdan-Harris entered a judgment of non-pros.

Subsequently, [Carmody] learned from 215-Get-A-Cab general counsel Danielle Friedman, Esquire, that 215-Get-A-Cab was a dispatch service only and not the owner of the taxicab company. On April 8, 2019, [Carmody] lost his *pro se* action at arbitration since he had sued the wrong entity. He did not file an appeal to the Philadelphia Court of Common Pleas.

[Carmody] commenced the instant action against [Appellees] on November 2, 2020. He asserted claims for (1) legal malpractice; (2) intentional infliction of emotional distress; and (3) fraud. He further sought punitive damages. [Carmody] filed Amended Complaints on February 23, 2021, April 1, 2021, and May 5, 2021.

Trial Court Opinion, 3/31/23, at 2-4 (citations omitted). Appellees ultimately filed a motion for summary judgment, which was granted following briefing by both parties. Relevant to this appeal, the trial court concluded that Carmody had failed to state a claim for legal malpractice because he did not obtain an expert supporting his claim or show that he would have succeeded in his underlying motor vehicle accident claim. It further held that the complaint was untimely filed after the expiration of the statute of limitations, that Carmody was not entitled to punitive damages, and that he was not entitled to conduct additional discovery after the deadline for doing so had passed. Carmody timely appealed and he and the trial court have complied with Pa. R.A.P. 1925.[2]

_____

[2] The trial court observed that Carmody's concise statement of issues complained of was "a disproportionally lengthy Statement of Errors for this type of matter involving a limited number of issues." Trial Court Opinion, *(Footnote Continued Next Page)*

**II.**

On appeal, Carmody contends that the trial court erred in granting Appellees' motion for summary judgment on his claim for legal malpractice and punitive damages.[3, 4] First, he argues that his complaint was timely filed because Appellees' malpractice was ongoing until they were granted leave to withdraw from the underlying case in October of 2018. Next, he argues that he can establish a claim for malpractice without expert testimony and that he can prove the viability of his underlying motor vehicle accident claim. Because he contends that the legal malpractice claim is cognizable, he asserts that he is entitled to pursue punitive damages as well. Finally, he argues that the trial court erred in granting summary judgment without allowing him to conduct additional discovery pursuant to Pa. R. Civ. P. 1035.3(b).

---

3/31/23, at 4. "In addition, this Statement of Errors is redundant and poorly organized, making it difficult for [the trial court] to review his alleged errors." *Id.* at 4-5. While we agree that Carmody's statement is not a model of clarity, the trial court was able to discern the relevant issues and our review on appeal is not hampered. Thus, we decline to find waiver.

[3] Carmody has not challenged the trial court's order as to the claims of intentional infliction of emotional distress and fraud.

[4] This Court's scope of review of a trial court's order granting summary judgment is plenary and we apply the same standard for summary judgment as does the trial court. [A]n appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion." ***Weaver v. Lancaster Newspapers, Inc.***, 926 A.2d 899, 902–03 (Pa. 2007) (internal citations omitted). A *de novo* standard of review applies as to whether there exists an issue of material fact, as this presents a pure question of law. ***Id.***

"Summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." ***Atcovitz v. Gulph Mills Tennis Club, Inc.***, 812 A.2d 1218, 1221 (Pa. 2002); Pa. R.C.P. No. 1035.2. When considering a motion for summary judgment, the trial court must construe all facts of record and make all reasonable inferences in the light that most favors the non-moving party. ***See Toy v. Metro. Life Ins. Co.***, 928 A.2d 186, 195 (Pa. 2007). Any question as to whether there exists a genuine issue of material fact must be resolved against the moving party. ***Id.*** For the purposes of summary judgment, the record includes pleadings, depositions, answers to interrogatories, admissions, affidavits and expert reports. Pa. R. Civ. P. 1035.1, 1035.4.

**A.**

We begin with Carmody's argument related to the statute of limitations. He argues that the Appellees committed malpractice when they filed the motor vehicle lawsuit on November 27, 2017, without his authorization. He contends that following his phone conversation with Perry, he believed that Appellees no longer represented him and proceeded to file his *pro se* action based on that belief. Thus, he contends that the lawsuit Appellees commenced in his name was unauthorized and constituted legal malpractice. While he recognizes that our Supreme Court rejected the "continuous representation rule" for determining the statute of limitations for legal malpractice in ***Clark***

- 5 -

*v. Stover*, 242 A.3d 1253 (Pa. 2020), he insists that there should be an exception when a lawsuit is pursued without a party's express authorization.

Legal malpractice claims sounding in tort are subject to a two-year statute of limitations. 42 Pa.C.S. § 5524(7). It is well-settled that Pennsylvania observes the "occurrence rule" for the statute of limitations in legal malpractice cases. "Under this rule, the statutory period commences upon the happening of the alleged breach of duty." *Glenbrook Leasing Co. v. Beausang*, 839 A.2d 437, 441 (Pa. Super. 2003) (citation omitted). In *Clark*, our Supreme Court considered whether to adopt the "continuous representation rule" for claims of legal practice, which would toll the statute of limitations for legal malpractice until the date the attorney's representation of the plaintiff was terminated. *Clark*, *supra*, at 1255. The High Court rejected the rule, concluding that it was within the province of the General Assembly, not the courts, to amend statutes of limitations or adopt new tolling provisions. *Id.* at 1256-57.

*Glenbook Leasing* and *Clark* are dispositive of Carmody's argument. Though he contends that initiating a lawsuit without authorization should constitute an exception to the occurrence rule, he cites no case law or statute in support of this position and this Court cannot craft an extra-statutory tolling exception to the statute of limitations. *Clark*, *supra*. Because Carmody contends that Appellees' malpractice occurred in November of 2017 by filing suit without his authorization, he was required to file his suit by November of

2019.  The instant case, filed November 2, 2020, was untimely.  Accordingly, the trial court did not err in granting summary judgment on this basis.

**B.**

Though the statute of limitations is dispositive of Carmody's case, we briefly address the remaining arguments he raises on appeal.  He claims that summary judgment was inappropriate because he can prosecute his claim for legal malpractice without expert testimony, and that he can establish that he would have succeeded in recovering for his automobile accident but for Appellees' malpractice.  He contends that filing a lawsuit without authorization is the type of malpractice an ordinary juror can comprehend without expert testimony, and the only issue of fact for the jury to decide was whether the Appellees continued to represent him when they filed suit on his behalf.

A claim for legal malpractice is comprised of three elements:  "1) the employment of the attorney or other basis for duty; 2) the failure of the attorney to exercise ordinary skill and knowledge; and 3) that such negligence was the proximate cause of damage to the plaintiff."  ***Storm v. Golden***, 538 A.2d 61, 64 (Pa. Super. 1988).  The ***Storm*** Court concluded that expert testimony is generally necessary to establish the second element of malpractice:

> Expert testimony becomes necessary when the subject matter of the inquiry is one involving special skills and training not common to the ordinary lay person. . . .

> We expressly limit our holding to the present circumstances in order to allow flexibility as to when expert evidence is needed.

Legal malpractice claims run a wide gamut of circumstances from clear cut claims of a breach of an attorney's duty for allowing the statute of limitations to run against the former client's cause of action to the complex determination required of a claim of breach of duty involving the attorney's choice of trial tactics in which a layperson's judgment obviously requires guidance. Between these two extremes lie a myriad number of legal malpractice actions for which the necessity of expert evidence to establish the attorney's duty and breach thereof will not be readily evident without careful examination of the factual circumstances upon which they arise.[] Generally, the determination of whether expert evidence is required or not will turn on whether the issue of negligence in the particular case is one which is sufficiently clear so as to be determinable by laypersons or concluded as a matter of law, or whether the alleged breach of duty involves too complex a legal issue so as to warrant explication by expert evidence.

*Id.* at 64–65 (citations omitted, cleaned up). In analyzing the third element of legal malpractice, a plaintiff must establish a "claim within a claim," *i.e.*, that but for the defendant's malpractice, he would have recovered on his underlying suit. *See 412 N. Front St. Assocs., LP v. Spector Gadon & Rosen, P.C.*, 151 A.3d 646, 657 (Pa. Super. 2016) ("Most problematic for Appellants was that no allegation provided a causal connection between either the alleged breach of contract or professional duty, respectively, and Appellants' proclaimed losses.").

Our Rules of Civil Procedure require that a plaintiff in a professional liability action file a certificate of merit within 60 days of filing his complaint certifying that an "appropriate licensed professional" has found a "reasonable probability" that the defendant caused the plaintiff's harm through work "outside acceptable professional standards." Pa. R. Civ. P. 1042.3(a)(1). Section (a)(2) of the rule allows for a certificate of merit based on the

defendant's responsibility to supervise another licensed professional's work. Pa. R. Civ. P. 1042.3(a)(2). Alternatively, the certificate may certify that expert testimony "is unnecessary for prosecution of the claim." Pa. R. Civ. P. 1042.3(a)(3).

Here, Carmody filed a certificate of merit under all three subsections of the Rule. Pursuant to Section (a)(1), he asserted that he, as an attorney licensed in New York, was an appropriate licensed professional who had concluded that Post & Schell's conduct fell outside of acceptable professional standards in pursuing his motor vehicle accident claim. Under Section (a)(2), he certified that Post & Schell was responsible for the conduct of the attorneys it supervised who did not meet professional standards. Finally, under Section (a)(3), he certified that the malpractice at issue did not require expert testimony to establish. On appeal, he relies on this third basis to argue that his certificate of merit was sufficient, claiming that expert testimony was not necessary because the issue of the unauthorized filing of Post & Schell's complaint was a simple matter of "common sense" that could be understood by a jury without expert analysis. Carmody's Brief at 17.

We disagree. Here, Carmody claims that the malpractice at issue was the filing of the Post & Schell's complaint without his authorization. The record, however, reveals that the issue of whether Appellees were justified in believing that they had a duty to represent Carmody was more complex. For instance, in October of 2016, Carmody asked Perry to send him a copy of his

file for the motor vehicle accident case. Perry did so, along with a letter asking Carmody to confirm his understanding that Appellees were no longer representing him in the case. The letter additionally notified Carmody that the statute of limitations on his claim would expire on November 23, 2017, again based on Perry's understanding that Carmody had terminated his representation. Carmody did not respond to the letter, explaining in his deposition that he had "no obligation to do so." Depo. of Carmody, 5/31/22, at 214. Perry apparently took this non-response as confirmation that the relationship had terminated.

On the eve of the expiration of the statute of limitations, on November 21, 2017, Carmody contacted Perry for an update on the status of the matter. Perry immediately responded and said that he believed the representation had been terminated and that Carmody was no longer retaining Appellees to represent him in the matter. When Carmody disputed this interpretation of events, Perry informed him he would have to speak with his general counsel to determine how to proceed. When Carmody did not hear back from Perry that same day, he filed his *pro se* complaint. Perry timely initiated the Post & Schell action on the following Monday to protect Carmody's rights, but then later sought to withdraw based on the breakdown in the relationship.

Carmody's argument is based on contradictory premises: first, that that attorney-client relationship was ongoing in November of 2017 and that Appellees had failed to diligently pursue his case, and second, that Appellees

did not have his authorization to file the Post & Schell complaint. Analysis of this claim would require a jury to consider the October 2016 letter and the circumstances leading up to the November 2017 conversations to determine the status of Appellees' representation of Carmody. These considerations implicate best practices for terminating an attorney-client relationship and the reasonableness of Perry's beliefs about Carmody's conduct, all of which are outside the general understanding of a jury of laypeople. Accordingly, we cannot conclude that Carmody would be able to establish malpractice without expert testimony on these matters.

In any event, the trial court did not err in determining that Carmody had failed to produce evidence that but-for Appellees' alleged malpractice, he would have recovered damages related to the motor vehicle accident. Crucially, Carmody could not produce any evidence that the driver of his taxicab was negligent. To the contrary, he testified at his deposition that the taxicab had been stopped at a red light and then proceeded into the intersection when the light turned green, at which point it was struck at a high rate of speed by the hit-and-run driver. A witness at the scene of the accident also reported to police that the taxi had been proceeding normally into the intersection when it was struck by the hit-and-run driver. Neither Carmody, Appellees nor the police ever identified the hit-and-run driver, who was undoubtedly at fault for the accident and the proper defendant from whom to

recover.[5]    While Carmody asserted that family members spoke with Hahnemann Hospital security and viewed footage of the accident, they did not identify the hit-and-run driver from this footage and no party was ever able to secure a copy of the alleged video.  Thus, even if Carmody had elected to prosecute the lawsuit Appellees filed on his behalf, he was not able to establish that he would have recovered for his injuries.  With no causal connection between the alleged malpractice and his proclaimed losses from the motor vehicle accident, Carmody could not succeed on his malpractice claim.  ***412 N. Front St. Assocs., LP***, ***supra***.  No relief is due.[6]

## C.

Finally, Carmody contends that the trial court erred by granting summary judgment without allowing him to seek discovery pursuant to Rule of Civil Procedure 1035.3(b).  **See** Pa. R. Civ. Pro. 1035.3(b) ("An adverse party [to a motion for summary judgment] may supplement the record or set

---

[5] Perry confirmed early in the case that Carmody did not have uninsured motorist insurance with which he could file a claim for the accident.

[6] Carmody summarily argues that "[i]n the event this matter is remanded, it follows that, consequently, a path will exist for the recovery of punitive damages and [he] should be entitled to prove up his entitlement to punitive damages[.]"  Carmody's Brief at 19.  However, as we have found that Carmody's claim is untimely and that he has failed to set forth a cause of action for legal malpractice, he similarly has no cognizable basis to seek punitive damages. **See Weston v. Northampton Pers. Care, Inc.**, 62 A.3d 947, 961 (Pa. Super. 2013) (citation omitted) ("A request for punitive damages does not constitute a cause of action in and of itself.  Rather, a request for punitive damages is merely incidental to a cause of action.").

- 12 -

forth the reasons why the party cannot present evidence essential to justify opposition to the motion and any action proposed to be taken by the party to present such evidence."). He faults Appellees for not responding to his interrogatories, expert interrogatories and requests for production of documents and complains that the trial court should have allowed additional time for him to seek discovery.

The trial court addressed this issue as follows:

A review of the docket in this matter shows that the discovery deadline was June 6, 2022 and the expert deadline was July 1, 2022.[] During the discovery period, [Carmody] did nothing to participate in discovery in any meaningful way. He did not take any depositions, did not issue any subpoenas, and failed to procure any expert reports. Indeed, [Carmody] was sanctioned twice, on June 15, 2021 and on July 8, 2022, for failing to comply with discovery requests from [Appellees]. [Carmody] only appeared for a deposition after [Appellees] filed a motion to compel him to appear.[] [Carmody] did not make any discovery requests from [Appellees] until June 7, 2022, one day **after** the discovery deadline had elapsed. Even though [Appellees] had no obligation to respond to this untimely request, [Appellees] still responded to [Carmody's] request for admissions and turned over their legal expert report. Furthermore, [Appellees] already provided Plaintiff with his entire file upon his request. [Carmody] does not state what other evidence he believes [Appellees] still have in their possession. The record is clear that [Carmody] had ample time during the discovery period to obtain any evidence he required to prove his claims and he inexplicably chose not to do so. There is nothing, if anything, he could obtain from [Appellees] now that he could not have acquired prior to [Appellees] filing their Motion for Summary Judgment. Moreover, [Carmody] has repeatedly stated that he does not have and will not procure any expert reports for his legal malpractice and intentional infliction of emotional distress claims. Without expert evidence, both claims fail and no other form of evidence he could purport to get from [Appellees] can cure them. Accordingly, no relief is due.

- 13 -

Trial Court Opinion, 3/31/23, at 15-16 (emphasis in original).  We agree.  The record reveals that Carmody waited until the eve of the discovery deadline to participate in the process and delayed producing his own responses to Appellees' timely discovery requests throughout the pendency of the case.  The trial court elected not to reward this gamesmanship by allowing him to conduct additional discovery when he had ample time to do so before the deadline expired and could not explain why additional time was warranted.[7]  This claim is meritless.

      Order affirmed.

---

[7] Carmody insists that his discovery requests were timely filed on June 6, 2022.  In their reply to his response to their motion for summary judgment, Appellees attached an email from Carmody with his discovery requests that was dated June 7, 2022, at 1:07 AM.  The email noted it had forwarded the requests "via Federal Express this evening, Pacific Time."  Reply Memorandum in Further Support of Defendants' Motion for Summary Judgment, 9/15/22, Exhibit A.  An accompanying FedEx receipt indicated that the materials were shipped on June 7, 2022, and received by Appellees on June 13, 2022.  *Id.*  Carmody asserts that he shipped the materials to Appellees from California at 7:53 PM on June 6, 2022.  This was clearly not a good faith effort to comply with the case management deadline or our Rules of Civil Procedure.  *See*, *e.g.*, Pa. R. Civ. Pro. 4009.12(a) (granting parties 30 days to respond to document requests); Pa. R. Civ. Pro. 4014(b) (granting parties 30 days to respond to requests to admission unless deadline is altered by the court).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>9/13/2023</u>